IN THE SUPREME COURT OF TENNESSEE
AT JACKSON
November 13, 2001 Session Heard at Memphis

# TRAU-MED OF AMERICA, INC. d/b/a/ BELLEVUE CLINIC  v. ALLSTATE INSURANCE COMPANY, ET AL.

**Appeal By Permission from the Court of Appeals, Western Section
Circuit Court for Shelby County
No. 97901 T.D.     Hon. Robert L. Childers, Judge**

---

**No. W1999-01524-SC-R11-CV - Filed March 25, 2002**

---

The plaintiff, a medical clinic, filed an action against the defendants alleging, among other things, tortious interference with business relationships and civil conspiracy. The defendants filed a motion to dismiss, which the trial court granted. The Court of Appeals reversed the trial court's dismissal of these claims, finding that the facts alleged in the complaint were sufficient to state claims upon which relief could be granted. This case is now before us to determine whether the trial court should have granted the defendant's motion to dismiss. We hold that the complaint in this case alleges sufficient facts to state a cause of action for tortious interference with business relationships. However, we dismiss the plaintiff's claim of civil conspiracy for failure to satisfy the plurality requirement necessary to establish an actionable conspiracy claim. Consequently, we affirm in part and reverse in part the judgment of the Court of Appeals and remand this case to the trial court for further proceedings consistent with this opinion.

**Tenn. R. App. P. 11 Application for Permission to Appeal; Judgment of the Court of Appeals Affirmed in Part, Reversed in Part; Case Remanded**

WILLIAM M. BARKER, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., and JANICE M. HOLDER, JJ., joined.

R. Layne Holley, Memphis, Tennessee, and William H. Frye, Jackson, Tennessee, for the appellants, Allstate Insurance Company, Vickie Harris, Charles E. Ferrell, Leslie Johnson, and Ron Iden.

Ed M. Hurley, Memphis, Tennessee, for the appellee, Trau-Med of America, Inc., d/b/a Bellevue Clinic.

## OPINION

# FACTUAL BACKGROUND

This case comes before us pursuant to a Rule of Civil Procedure 12.02(6) motion to dismiss and requires us to review the trial court's dismissal of two claims: tortious interference with a business relationship and intracorporate civil conspiracy. In making our decision today, we review only the legal sufficiency of the plaintiff's cause of action, and we make no comment as to whether the allegations may be supported by proof as there is no evidence before us at this stage. For purposes of this appeal, we take as true the following allegations of fact drawn from the complaint.

As alleged in the complaint, Trau-Med of America, Inc. [hereinafter "Trau-Med"], a Tennessee corporation located in Memphis, is one of several physician practice management companies operating in Shelby County. The primary purpose of these companies is to make medical care more accessible to the public, especially to uninsured and indigent personal injury victims. As one source of business, Trau-Med accepts referrals from attorneys representing uninsured personal injury victims who are otherwise unable to afford medical care. In turn, Trau-Med contracts to provide administrative services to licensed medical doctors who treat such "indigent victims of trauma with meritorious claims for personal injury." Trau-Med is then compensated for its services after the victims either settle their claims or receive the proceeds of a judgment following litigation.

On November 10, 1998, Trau-Med filed suit collectively against Allstate Insurance Company [hereinafter "Allstate"], its employees, and its agents. In its complaint, Trau-Med alleges that Allstate purposefully attacked the plaintiff's lawful business by making libelous statements and by creating defamatory documents for the purpose of ruining its reputation in the legal community. Specifically, the complaint avers that Allstate, "wishing to control the activity of claimants with legitimate personal injuries and without the intervention of licensed attorneys, devised a scheme with its agents/employees . . . to limit access to health care for injured persons in Memphis and Shelby County, Tennessee, and thus control and limit their claims expenses."

Trau-Med also alleges that Allstate directed the attorneys hired to defend its policyholders to file defamatory motions accusing Trau-Med of the following unlawful conduct: practicing medicine in violation of Tennessee law, administering physical therapy services in violation of Tennessee law, and employing unlicensed physical therapists. The complaint further avers that Allstate conspired with its agents and employees to destroy Trau-Med, as well as other similar clinics and medical organizations, and in fact circulated among its employees a "hit list" of these targeted clinics. Allstate's agents allegedly relied on this list to inform plaintiffs' attorneys that they would "get" Trau-Med and that Trau-Med is "next" on the list of targets. Moreover, Allstate's agents are alleged to have implied that all claimants who do receive medical treatment from Trau-Med can expect to be "embroiled in unnecessary and expensive litigation."

Finally, Trau-Med avers that Allstate's actions have received "wide publication in the legal profession especially with attorneys who represent injured claimants, [and have] taken a form of

intimidation by raising concern with attorneys about the propriety of [Trau-Med's] business." Further, Allstate's false and defamatory allegations have "brought about great economic loss, [have] frightened and demoralized its employees and independent contractor physicians and caused irreparable damage to [Trau-Med's] reputation and prospective economic advantage in the community."

Based on these allegations, Trau-Med's complaint sets forth seven separate counts for recovery: (I) tortious interference with a business relationship accompanied by a malicious and intentional motive to destroy and/or damage Trau-Med's business and to cause it to suffer financial loss; (II) intentional interference with prospective economic advantage; (III) abuse of civil process; (IV) willful, intentional, deliberate, and purposeful conduct causing damage to Trau-Med's reputation and causing it to lose business; (V) conspiracy for the purpose of destroying Trau-Med's reputation and business; (VI) violation of the Federal Racketeer Influence and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c), (d) (2000); and (VII) violation of Tennessee Racketeer Influence and Corrupt Organizations Act (RICO), Tenn. Code Ann. § 39-12-204(c), (d) (1997).

Allstate filed a motion to dismiss the complaint pursuant to Tennessee Rule of Civil Procedure Rule 12.02(6), stating that Trau-Med failed to allege sufficient facts stating a cause of action upon which relief could be granted. The trial court thereafter entered an order dismissing counts I, IV, V, and VI. By the same order, counts II and VII were dismissed upon Trau-Med's oral notice of voluntary dismissal pursuant to Civil Procedure Rule 41.01. Later, the trial court also dismissed count III, thereby dismissing all counts of Trau-Med's complaint.

Trau-Med appealed the dismissal of count I, tortious interference with a business relationship, count III, abuse of civil process, and count V, conspiracy. The Court of Appeals affirmed the trial court's dismissal of count III. However, it reversed the trial court's order dismissing counts I and V, finding that the complaint stated claims of tortious interference with a business relationship and conspiracy. In its appeal to this Court, Allstate challenges the intermediate court's reversal of counts I and V. After a careful review of the relevant authorities, we hold that the complaint in this case alleges sufficient facts to state a cause of action for tortious interference with a business relationship. However, we find that Trau-Med has not stated a claim for civil conspiracy. Accordingly, for the reasons given herein, we affirm in part and reverse in part the judgment of the Court of Appeals, and we remand the case to the Shelby County Circuit Court for further proceedings in accordance with this opinion.

**STANDARD OF REVIEW**

A Rule 12.02(6) motion to dismiss only seeks to determine whether the pleadings state a claim upon which relief can be granted. Such a motion challenges the legal sufficiency of the complaint, not the strength of the plaintiff's proof, and, therefore, matters outside the pleadings should not be considered in deciding whether to grant the motion. See Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A., 986 S.W.2d 550, 554 (Tenn. 1999). In reviewing a motion to dismiss, the appellate court must construe the complaint liberally, presuming all factual

allegations to be true and giving the plaintiff the benefit of all reasonable inferences. See Pursell v. First Am. Nat'l Bank, 937 S.W.2d 838, 840 (Tenn. 1996). It is well-settled that a complaint should not be dismissed for failure to state a claim unless it appears that the plaintiff can prove no set of facts in support of his or her claim that would warrant relief. See Doe v. Sundquist, 2 S.W.3d 919, 922 (Tenn. 1999); Fuerst v. Methodist Hosp. S., 566 S.W.2d 847, 848 (Tenn. 1978). Great specificity in the pleadings is ordinarily not required to survive a motion to dismiss; it is enough that the complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." White v. Revco Disc. Drug Ctrs., Inc., 33 S.W.3d 713, 718 (Tenn. 2000) (citing Tenn. R. Civ. P. 8.01). We review the trial court's legal conclusions *de novo* without giving any presumption of correctness to those conclusions. Id.

## LIABILITY OF THE INSURER FOR CONDUCT OF AN ATTORNEY HIRED TO DEFEND THE INSURED

The preliminary issue in this case is whether an insurance company can be held vicariously liable for the actions of counsel hired by the company to represent the insured. Pursuant to traditional liability insurance contracts, the insurance company typically obligates itself to hire counsel to defend lawsuits against the insured, to pay the costs of defense, and to indemnify the insured for judgments and settlements within the policy's limits. See Charles Silver & Kent Syverud, The Professional Responsibilities of Insurance Defense Lawyers, 45 Duke L.J. 255, 264-65 (1995). However, the employment of the attorney by the insurer does not impose upon that attorney any duty or loyalty to the insurer that could impair the attorney-client relationship between the attorney and the insured:

> The terms of the agreement between the insurer and the attorney whereby the attorney agrees to undertake the representation of the insured must respect the attorney-client relationship between the attorney and the insured. . . . The employer cannot control the details of the attorney's performance, dictate the strategy or tactics employed, or limit the attorney's professional discretion with regard to the representation.

See In re Youngblood, 895 S.W.2d 322, 328 (Tenn. 1995); see also Tenn. Bd. of Prof'l Responsibility, Formal Op. 00-F-145 (Sept. 8, 2000).

However, where, as here, the insurer is alleged to have "controlled the details of the attorney's performance, or dictated the strategy or tactics employed," or otherwise directed the attorney's conduct of the actual litigation, the insurer may be held vicariously liable for the conduct of that attorney. Givens v. Mullikin, ____ S.W.3d ____ (Tenn. 2002).

In Givens, an opinion filed simultaneously with the opinion in this case, we first characterized the role of the attorney in this relationship as that of an independent contractor who provides legal services to his or her client, the insured. The insurer, as the principal, has no legal right to control the independent professional judgment of the attorney whom it hires to defend the

-4-

insured.  However, under Tennessee's general common law of agency, if the insurer as the principal actually orders, directs, or knowingly authorizes the attorney to perform an act, an agency relationship arises that will render the principal liable for the harm proximately resulting from the directed acts.  Id. at ___ (citing Kinnard v. Rock City Constr. Co., 39 Tenn. App. 547, 551, 286 S.W.2d 352, 354 (1955)).  It is this exercise of actual control or authorization over the actions of the insured's attorney that renders the insurer liable.  Accordingly, we held in that case, and we hold again in the present case, that the insurer can be held vicariously liable for the acts or omissions of an attorney hired to represent an insured when those acts or omissions were, at least in part, directed, commanded, or knowingly authorized by the insurer.

After carefully examining the factual averments in the complaint, we conclude that Trau-Med has made sufficient allegations that, if proven, would give rise to vicarious liability on the part of Allstate.  Specifically, Trau-Med claims that in several actions filed in the Circuit Court of Shelby County, Allstate "instigated and caused [Motions] in Limine to be filed," which alleged that Trau-Med was engaging in unlawful activity.  Trau-Med further maintains that "the allegations in these Motions in Limine were instigated by Allstate through its financial clout with the attorneys it hired to represent its policyholders; that the allegations are totally false[, and] were maliciously made with the intent to destroy [Trau-Med] and its business."  Consequently, if the proof supports the allegations in the complaint that Allstate exercised actual control over the attorneys hired to defend the insureds by directing them to file defamatory motions, Allstate is vicariously liable under the laws of agency for the harm proximately resulting from the attorneys' conduct.

## INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONSHIPS

Having determined that Allstate may be held vicariously liable for the tortious acts of counsel hired to defend an insured if it directed, commanded, or knowingly authorized the acts, we now determine whether the complaint in this case states a cognizable cause of action for tortious interference with business relationships.

In 1915, this Court first articulated the principle that a defendant should be held responsible for interfering in the noncontractual business relationships of a plaintiff with motives or means contrary to those used to further lawful competitive business practices.  See Hutton v. Watters, 132 Tenn. 526, 179 S.W. 134 (1915).  In Hutton, the defendant, the president of a boarding school, became angry with the plaintiff, a boarding house owner and operator, over her refusal to dismiss one of her boarders.  Subsequently, the defendant, along with the school's trustees, directors, teachers, and advisors, sought to drive the plaintiff out of business by threatening the plaintiff's current and prospective student boarders with deprivation of school benefits if they patronized her establishment.  As a result of the defendant's actions, the plaintiff's business was nearly destroyed.

This Court, finding that the plaintiff had alleged sufficient facts to state a cause of action, acknowledged:

Every one has the right to establish and conduct a lawful business, and is

entitled to the protection of organized society, through its courts, whenever that right is unlawfully invaded. Such right existing, the commission of an actionable wrong is established against any one who is shown to have intentionally interfered with it, without justifiable cause or excuse.

    . . . .

In short, if an act be hurtful to another, intentional, and without legal justification, it is malicious in the true legal sense, . . . therefore unlawful, and is actionable.

Id. at 530, 179 S.W. at 135.

For approximately 80 years following our decision in Hutton, courts in this jurisdiction presumed that a defendant's malicious conduct preventing a third person from conducting business with the plaintiff was tortious and therefore actionable. See, e.g., Nashville Mem'l Hosp., Inc. v. Binkley, 534 S.W.2d 318, 321 (Tenn. 1976), *overruled on other grounds by* Lewisburg Cmty. Hosp., Inc. v. Alfredson, 805 S.W.2d 756 (Tenn. 1991); Lann v. Third Nat'l Bank, 198 Tenn. 70, 72, 277 S.W.2d 439, 440 (1955); Kan Constr. & Cleaning Corp. v. Tatum, No. 01A01-9304-CV-00150 (Tenn. Ct. App. filed at Nashville Oct. 27, 1993); Testerman v. Tragesser, 789 S.W.2d 553, 556-57 (Tenn. Ct. App. 1989). However, for various reasons–either because the facts of the cases precluded the imposition of liability, or because liability was imposed on other grounds, see, e.g., Binkley, 534 S.W.2d at 321 (finding that the complaint stated a claim of conspiracy to injure the plaintiff in the practice of his medical profession)–courts in this state had never expressly upheld a claim based on this tort. Indeed, the tort had neither been expressly adopted nor rejected prior to our decision in Nelson v. Martin, 958 S.W.2d 643 (Tenn. 1997).[1]

Although we recognized in Nelson that the tort of interference with noncontractual business relationships had emerged as an extension of the well-known principles establishing liability for

---

[1] See also Quality Auto Parts Co. v. Bluff City Buick Co., 876 S.W.2d 818, 823 (Tenn. 1994) (postponing the adoption of the tort of "intentional interference with prospective economic advantage").

Perhaps as a result of the different label we attributed to the tort in Quality Auto Parts Co., our decision was apparently misinterpreted to separate into two distinct causes of action claims of interference with *prospective* and *existing* business relationships. Consequently, after 1994, courts upheld claims for interference with *existing* business relations, but dismissed allegations of tortious interference with *prospective* business relationships. See, e.g., Collins v. Greene County Bank, 916 S.W.2d 941, 946-47 (Tenn. Ct. App. 1996) (affirming the trial court's conclusion that "there is no cause of action in Tennessee for tortious interference with a prospective business relationship," but remanding the case to determine whether the alleged interference was with an existing business relationship); see also New Life Corp. of Am. v. Thomas Nelson, Inc., 932 S.W.2d 921, 928 (Tenn. Ct. App. 1996) (concluding that the evidence establishes a genuine issue of material fact regarding whether the defendant tortiously interfered with plaintiff's existing business relationships); Overland Indus. Lubricant Corp. v. City of Waynesboro, No. 01-A-01-9412-CH-00602 (Tenn. Ct. App. filed at Nashville Feb. 7, 1996) ("While the Supreme Court in Hutton v. Watters recognized a tort for intentional interference with business relations, the [C]ourt in the recent case of Quality Auto Parts v. Bluff City Buick distinguished [Hutton] and said that the tort of intentional interference with prospective economic advantage has never been expressly recognized in this state. *It is possible that there are two separate torts . . . .*" (citations omitted) (emphasis added)).

-6-

interference with contractual relations, we declined to extend the tort to protect noncontractual economic advantage, fearing that such an extension would "greatly hamper free competition in the marketplace." Id. at 646. Indeed, as the tort was originally formulated, a claim for intentional interference with business relations could be actionable merely upon proof that a defendant's intentional acts resulted in a plaintiff's economic injury. Specifically, the elements of the tort and burden-of-proof requirements, as originally adopted by several jurisdictions, included: (1) the existence of a business relationship or expectancy (not necessarily contractual); (2) knowledge by the interferer of the relationship or expectancy; (3) an intentional act of interference; (4) proof that the interference caused the harm sustained; and (5) damage to the plaintiff. Id. at 645 n.3 (quoting Quality Auto Parts Co., 876 S.W.2d at 823). Essentially, then, proof of these elements–without any consideration of the propriety of the defendant's objective or motive–could make actionable all lawful, competitive business practices, and, as evidenced by our decision in Nelson, we were unwilling to recognize the tort in its original form.

Our primary concern in Nelson was that, because this tort extends beyond situations in which there exists a valid contractual relationship, it could potentially infringe upon the principle of free competition by holding liable those individuals engaged in legitimate business practices. Indeed, we have not been alone in this concern:

> Economic relationships short of contractual, however, should stand on a different legal footing as far as the potential for tort liability is reckoned. Because ours is a culture firmly wedded to the social rewards of commercial contests, the law usually takes care to draw lines of legal liability in a way that maximizes areas of competition free of legal penalties.

Della Penna v. Toyota Motor Sales, U.S.A., Inc., 92 P.2d 740, 750-51 (Cal. 1995). To address this concern, a majority of jurisdictions have restructured the elements of the tort to add the requirement of proof of *improper* conduct extending beyond the bounds of doing business in a freely competitive economy. For example, in Top Service Body Shop, Inc. v. Allstate Insurance Co., 582 P.2d 1365 (Or. 1978), the Oregon Supreme Court held that a claim is made when "interference resulting in injury to another is wrongful by some measure beyond the fact of the interference itself. Defendant's liability may arise from improper motives or from the use of improper means." Id. at 1371; see also *Restatement (Second) of Torts* § 766B & cmt. c. (1979).[2] Many other jurisdictions have adopted

---

[2] The *Restatement (Second) of Torts* sets forth the tort of intentional interference with prospective contractual relations, which includes interference with a business or other customary relationship not amounting to a formal contract, as follows:

> One who intentionally and *improperly* interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of
>> (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or
>> (b) preventing the other from acquiring or continuing the prospective relation.

(continued...)

variations of a rule requiring a plaintiff to prove that the alleged interference was "wrongful," "improper," "illegal," or otherwise "independently tortious."[3]  As aptly summarized by the Illinois Appellate Court,

> The theory of the tort of interference, it is said, is that the law draws a line beyond which no member of the community may go in intentionally intermeddling with the business affairs of others; that if acts of which complaint is made do not rest on some legitimate interest, or if there is sharp dealing or overreaching or other conduct below the behavior of fair men similarly situated, the ensuing loss should be redressed; and that the line of demarcation between permissible behavior and interference reflects the ethical standards of the community.

City of Rock Falls v. Chicago Title & Trust Co., 300 N.E.2d 331, 333 (Ill. App. Ct. 1973).

Consequently, in view of the foregoing, we believe that continued abolition of the tort in this state would be unreasonable.  Instead, we expressly adopt the tort of intentional interference with business relationships, thereby overruling that portion of our decision in Nelson.  We also hold that liability should be imposed on the interfering party provided that the plaintiff can demonstrate the following:  (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons;[4] (2) the defendant's knowledge of that

---

[2] (...continued)
(emphasis added).

[3] See Della Penna, 902 P.2d at 746-47 (citing Wagenseller v. Scottsdale Mem'l Hosp., 710 P.2d 1025, 1042-43 (Ariz. 1985); Westfield Dev. Co. v. Rifle Inv. Ass'n, 786 P.2d 1112, 1117 (Colo. 1990); Blake v. Levy, 464 A.2d 52, 54-55 (Conn. 1983); U.S. Anchor Mfg., Inc. v. Rule Indus., Inc., 443 S.E.2d 833, 836 (Ga. 1994); Idaho First Nat'l Bank v. Bliss Valley Foods, Inc., 824 P.2d 841, 861 (Idaho 1991); Harsha v. State Sav. Bank, 346 N.W.2d 791, 799 (Iowa 1984); Turner v. Halliburton Co., 722 P.2d 1106, 1117 (Kan. 1986); National Collegiate Athletic Ass'n v. Hornung, 754 S.W.2d 855, 859 (Ky. 1988); Devine v. Roche Biomedical Lab., Inc., 637 A.2d 441, 447 (Me. 1994); Macklin v. Robert Logan Assocs., 639 A.2d 112, 119 (Md. 1994); United Truck Leasing Corp. v. Geltman, 551 N.E.2d 20, 23 (Mass. 1990); State Bd. of Dentistry v. Kandarian, 886 P.2d 954, 959 (Mont. 1994); Montrone v. Maxfield, 449 A.2d 1216, 1217 (N.H. 1982); Printing Mart v. Sharp Elecs. Corp., 563 A.2d 31, 39 (N.J. 1989); Anderson v. Dairyland Ins. Co., 637 P.2d 837, 840-41 (N.M. 1981); Krebsbach v. Henley, 725 P.2d 852, 857-58 (Okla. 1986); Federal Auto Body Works, Inc. v. Aetna Cas. & Sur. Co., 447 A.2d 377, 380 (R.I. 1982); Leigh Furniture & Carpet Co. v. Isom, 657 P.2d 293, 307 (Utah 1982); Duggin v. Adams, 360 S.E.2d 832, 836 (Va. 1987); Pleas v. City of Seattle, 774 P.2d 1158, 1163 (Wash. 1989); Four Nines Gold, Inc. v. 71 Constr., Inc., 809 P.2d 236, 238  (Wyo. 1991)).

[4] We adopt the discussion in § 766B comment c of the *Restatement (Second) of Torts*, which provides:
The relations protected against intentional interference by the rule stated in this Section include any prospective contractual relations, except those leading to contracts to marry, if the potential contract would be of pecuniary value to the plaintiff.  Included are interferences with the prospect of obtaining employment or employees, the opportunity of selling or buying land or chattels or services, and any other relations leading to potentially profitable contracts.  Interference with the exercise by a third party of an option to renew or extend a contract with the plaintiff is also included.  *Also included is*

(continued...)

relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's *improper motive or improper means*,[5] see, e.g., Top Serv. Body Shop, 582 P.2d at 1371; and finally, (5) damages resulting from the tortious interference.

In the instant case, Trau-Med has pleaded both improper motive and improper means of interference. First, Trau-Med alleges that Allstate knew of its business relationships with plaintiff-attorneys and claimants. Specifically, Allstate allegedly interfered with six specific actions filed in the Circuit Court of Shelby County by making false statements about the propriety of Trau-Med's business and by threatening to protract the litigation process. As a result of Allstate's alleged conduct, "[p]laintiff-attorneys, claimants, and others, . . . because of fear of litigation and other reasons, [have been induced] not to refer persons and to discontinue use of Plaintiff's clinic." Trau-Med contends that this improper interference with its existing business relationships resulted in substantial economic harm to Trau-Med. Allstate's predominant motive was to drive Trau-Med out of business for the sole purpose of limiting health care access to indigent claimants to "control and limit [Allstate's] claims expenses." Viewing these factual allegations in a light most favorable to the plaintiff, we find that Trau-Med has sufficiently stated a claim for tortious interference with a business relationship.

## INAPPLICABILITY OF THE DEFENSE OF JUDICIAL PRIVILEGE
## TO CLAIMS OF TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS

In response to these allegations, Allstate argues that the crux of the plaintiff's complaint is that its business was damaged as a result of false and malicious statements made by Allstate during the litigation process. Because these statements were made during the course of, or in contemplation of, judicial proceedings, Allstate contends that it is immune from liability under the doctrine of judicial privilege relying on this Court's decision in Lann v. Third National Bank, 198 Tenn. 70, 277

---

[4] (...continued)
*interference with a continuing business or other customary relationship not amounting to a formal contract.*
(emphasis added).

[5] It is clear that a determination of whether a defendant acted "improperly" or possessed an "improper" motive is dependent on the particular facts and circumstances of a given case, and as a result, a precise, all-encompassing definition of the term "improper" is neither possible nor helpful. However, with regard to improper motive, we require that the plaintiff demonstrate that the defendant's predominant purpose was to injure the plaintiff. See Leigh Furniture & Carpet Co., 657 P.2d at 307-08.

Moreover, in the attempt to provide further guidance, we cite the following methods as some examples of improper interference: those means that are illegal or independently tortious, such as violations of statutes, regulations, or recognized common-law rules, see id. at 308; violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship, see Duggin, 360 S.E.2d at 836 (citing Top Serv. Body Shop, Inc., 582 P.2d at 1371 n.11); and those methods that violate an established standard of a trade or profession, or otherwise involve unethical conduct, such as sharp dealing, overreaching, or unfair competition, see id. at 837.

S.W.2d 439 (1955). In that case, the plaintiff sued the bank to recover for the "interference with and injury to her business" resulting from false and malicious statements made by the bank in its original pleading. Although the Lann Court had much difficulty in determining the precise nature of the cause of action set out in the plaintiff's convoluted declaration, the Court found that the defendant was entitled to claim judicial privilege as a defense.

After careful consideration, we believe that the better view is that contained in the *Restatement (Second) of Torts* sections 585-589, which provides that the defense of judicial privilege is available to actions of *defamation*. In that respect Trau-Med expressly states in its brief that its lawsuit against Allstate is not based upon defamation. Instead, Trau-Med seeks only to recover the pecuniary loss of the benefits of its business relationships. Absent any claims for defamation, we decline to extend the privilege to claims for intentional interference with business relationships. See, e.g., Zdeb v. Baxter Int'l, Inc., 697 N.E.2d 425, 430 (Ill. App. Ct. 1998) (declining to extend the privilege to claims for intentional interference with business relationships). Accordingly, we hold that Allstate may not rely upon judicial privilege as a defense to the plaintiff's cause of action.

## INTRACORPORATE CIVIL CONSPIRACY

Finally, Trau-Med also alleges that Allstate Insurance Company, through its employees, representatives, agents, and attorneys, engaged in a civil conspiracy "for the purpose of destroying [Trau-Med's] reputation, business and clinic." Specifically, Allstate's agents purportedly conspired to deter attorneys representing indigent claimants from referring their clients to Trau-Med. First, Trau-Med asserts that a "hit list" was circulated among Allstate's agents and employees, indicating those clinics, including Trau-Med, being targeted for destruction. Relying on this list, the insurance company's agents and employees conveyed to plaintiffs' attorneys that Allstate "will get [Trau-Med]," or that Trau-Med is "next," with the design to deter these attorneys from referring their clients to Trau-Med. The result has been the destruction of Trau-Med's business. In response to these allegations, Allstate argues that the claim fails because it does not allege the requisite plurality of legal actors necessary for a finding of conspiracy.

An actionable civil conspiracy is a combination of two or more persons who, each having the intent and knowledge of the other's intent, accomplish by concert an unlawful purpose, or accomplish a lawful purpose by unlawful means, which results in damage to the plaintiff. See Brown v. Birman Managed Care, Inc., 42 S.W.3d 62, 67 (Tenn. 2001) (citing Dale v. Thomas H. Temple Co., 186 Tenn. 69, 87, 208 S.W.2d 344, 353 (1948)). Upon a finding of conspiracy, each conspirator is liable for the damages resulting from the wrongful acts of all co-conspirators in carrying out the common scheme. Id.

It has long been accepted in Tennessee that a corporation is capable of extra-corporate conspiracy; that is, a corporation becomes vicariously liable for the conduct of its agents who conspire with other corporations or with outside third persons. See, e.g., Standard Oil Co. v. State, 117 Tenn. 618, 665, 100 S.W. 705, 716-17 (1907). However, where each alleged co-conspirator is an agent or employee of the same corporate entity and is acting on the corporation's behalf, the

conspiratorial liability of that corporation becomes less clear.

Courts in other jurisdictions–both federal and state–that have addressed issues involving civil intracorporate conspiracy allegations have adopted the "intracorporate conspiracy immunity doctrine" to hold that wholly intracorporate conduct does not satisfy the plurality requirement necessary to establish an actionable conspiracy claim.[6] This single entity view of intracorporate conduct derives from traditional principles of agency law. A basic principle of agency is that a corporation can act only through the authorized acts of its corporate directors, officers, and other employees and agents. Thus, the acts of the corporation's agents are attributed to the corporation itself. "The two are not one and another. So merged are their identities, when the agent is acting for the corporation (the only way it can act at all[)], that the one may not be an accessory of the other." Haverty Furniture Co. v. Foust, 174 Tenn. 203, 212, 124 S.W.2d 694, 698 (1939) (citations omitted). Because the law requires two or more persons or entities to have a conspiracy, a civil conspiracy is not legally possible where a corporation and its alleged co-conspirators are not separate entities, but instead stand in a principal-agent relationship. See 16 Am. Jur. 2d *Conspiracy* § 56 (1998).

We recognize the rule expressed by this doctrine as a sound one, and consequently, we hold that there can be no actionable claim of conspiracy where the conspiratorial conduct alleged is essentially a single act by a single corporation acting through its officers, directors, employees, and other agents, *each acting within the scope of his or her employment.*[7] The acts of these representatives, if performed within their representative, agency, or employment capacities on behalf of the corporation, are attributed to the corporation. See Forrester v. Stockstill, 869 S.W.2d 328, 334-35 (Tenn. 1994). As long as the agent is acting within the scope of his or her authority, the agent and the corporation are not separate entities and cannot be the sole parties to a conspiracy.

---

[6] See, e.g., Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 770-71 (1984) (applying the doctrine in the antitrust context and holding that a parent corporation and its wholly owned subsidiary are incapable of conspiring under Section 1 of the Sherman Act); Hills & Dales Gen. Hosp., 40 F.3d at 839-41 (applying the doctrine in the context of civil rights) (citing Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ., 926 F.2d 505, 510 (6th Cir. 1991)); Renner v. Wurdeman, 434 N.W.2d 536, 542 (Neb. 1989) ("'A corporation cannot conspire with an agent when that agent is *acting within the scope of his authority*.'" (citation omitted) (emphasis in original)); Collins v. Union Fed. Sav. & Loan Ass'n, 662 P.2d 610, 622 (Nev. 1983) ("Agents and employees of a corporation cannot conspire with their corporate principal or employer when they act in their official capacities on behalf of the corporation and not as individuals for their individual advantage."); Gray v. Marshall County Bd. of Educ., 367 S.E.2d 751, 752 (W. Va. 1988) ("A corporation, as a single business entity, acts with one "mind" and the unilateral acts of a corporation will not satisfy the requirement of a [conspiracy].").

[7] Although not discussed by the parties, we acknowledge that this Court has expressed, albeit in dicta, a different view in Standard Oil Co. v. State. However, there are important and distinct factual differences between the two cases. First, unlike in the present case, the conspiracy at issue in Standard Oil Co. involved a corporation and an individual *unaffiliated with that corporation*, thereby satisfying the requisite plurality of parties necessary for an actionable claim of conspiracy. Moreover, Standard Oil Co. involved charges of *criminal* conspiracy. Because the case presently before us involves allegations of *civil* conspiracy, we leave for another day the decision of whether to apply the intracorporate conspiracy immunity doctrine in the criminal context.

-11-

See, e.g., Day v. General Elec. Credit Corp., 546 A.2d 315, 318-19 (Conn. App. Ct. 1988). Indeed, it is this "scope of employment" exception that prevents the intracorporate conspiracy immunity doctrine from being applied too broadly and thereby immunizing all private conspiracies from redress where the actors coincidentally were employees of the same company. See Johnson v. Hills & Dales Gen. Hosp., 40 F.3d 837, 840 (6th Cir. 1994). Therefore, for a claim of intracorporate conspiracy to be actionable, the complaint must allege that corporate officials, employees, or other agents acted outside the scope of their employment and engaged in conspiratorial conduct to further their own personal purposes and not those of the corporation. See, e.g., Renner v. Wurdeman, 434 N.W.2d 536, 542 (Neb. 1989).

In the present case, the Court of Appeals upheld Trau-Med's claim for civil conspiracy, maintaining that "under a proper set of facts," the corporate individuals could be held liable for conspiring to further their own individual interests. We disagree and conclude that the plaintiff has not made sufficient allegations to support a claim of civil conspiracy. Although a complaint "need not contain in minute detail the facts that give rise to the claim," the complaint must at least "contain allegations from which an inference may fairly be drawn that evidence on these material points will be introduced at trial." Donaldson v. Donaldson, 557 S.W.2d 60, 61 (Tenn. 1977). Furthermore, "[t]here is no duty on the part of the court to create a claim that the pleader does not spell out in his complaint." Id. at 62 (citing Clark v. National Travelers Life Ins. Co., 518 F.2d 1167 (6th Cir. 1975)).

Trau-Med's complaint alleges that Allstate, as a corporation, conspired with its employees, representatives, agents, *and attorneys*. Excluding, for the time being, the alleged involvement of the attorneys in the conspiracy, we focus our attention on the alleged conspiratorial conduct of the corporate employees. In this case, the plaintiff does not even intimate, much less expressly allege, in the complaint that the corporate agents involved in conspiratorial conduct were acting outside the scope of their employment or that they were pursuing their own personal objectives. To the contrary, the complaint specifically avers that Allstate, with its employees and agents, "devised a scheme . . . to limit access to health care for injured persons in Memphis and Shelby County, Tennessee, and thus control and limit their claims expenses." This fact, even when viewed in a light most favorable to Trau-Med, demonstrates that the employees or agents were not acting to advance their own personal interests, but were acting in the course of their duties with the primary intent to further the corporation's interests.

Proof of the existence of a conspiracy must therefore be found, if at all, in the alleged conspiratorial conduct between Allstate and the attorneys hired to defend the insureds. As we have explained in Givens, the attorney-client relationship in this situation is between the attorney and the insured. The attorney is generally characterized as an independent contractor who represents the insured, not the insurer. The insurer has no legal right to control the independent professional judgment of the attorney whom it hires to defend the insured.

However, in this case, Trau-Med alleges that Allstate exercised actual control over the attorneys hired to defend the insureds by directing them to file defamatory motions. Presuming all

factual allegations to be true, the attorneys did not act "with that independence which was required of [them] as counsel and as [officers] of the court," cf. Doherty v. American Motors Corp., 728 F.2d 334, 343 (6th Cir. 1984), but instead, the attorney became an agent of the corporation, acting at the direction, and on the behalf, of the insurer with the primary intent to further the interest of the corporation. Because all acts of the corporation's agents are attributed to the corporation itself, the intracorporate conspiracy immunity doctrine applies in this case. Consequently, we reverse the judgment of the Court of Appeals on this issue and dismiss Trau-Med's civil conspiracy allegations for failure to state a claim upon which relief may be granted.

## CONCLUSION

In summary, we affirm in part the judgment of the Court of Appeals and hold that the complaint in this case alleges sufficient facts to state a cause of action for tortious interference with a business relationship. However, we dismiss the plaintiff's claim of intracorporate civil conspiracy for failure to satisfy the plurality requirement necessary to establish an actionable conspiracy claim. Accordingly, we remand this case to the Shelby County Circuit Court for further proceedings consistent with this opinion.

Costs of this appeal are assessed equally to the plaintiff, Trau-Med of America, Inc., and to the defendants, Allstate Insurance Company, Vickie Harris, Charles E. Ferrell, Leslie Johnson, and Ron Iden.

_____
WILLIAM M. BARKER, JUSTICE