10-1152-cv
Melvin Steinhardt v. UBS Securities LLC

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, in the City of New York, on the 4th day of  March, two thousand eleven.

Present:
        AMALYA L. KEARSE,
        ROBERT D. SACK,
        ROBERT A. KATZMANN,
                *Circuit Judges.*

_____

MELVIN STEINHARDT, on behalf of himself and all others
similarly situated,

        *Plaintiff-Appellant*,

          v.                     No. 10-1152-cv

UBS SECURITIES LLC, UBS LOAN FINANCE LLC,

        *Defendants-Appellees*.

_____

| | |
|---|---|
| For Plaintiff-Appellant: | DAVID C. KATZ, Weiss & Lurie, New York, N.Y. (Joseph H. Weiss, Weiss & Lurie, New York, N.Y., Jules Brody, Patrick Slyne, Stull, Stull & Brody, New York, N.Y., *on the brief*). |
| For Defendants-Appellees: | E. JOSHUA ROSENKRANZ, Orrick, Herrington & Sutcliffe LLP, New York, N.Y. |

Appeal from the United States District Court for the Eastern District of New York (Ross, *J.*).

**ON CONSIDERATION WHEREOF**, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Melvin Steinhardt appeals from a March 19, 2010 judgment of the United States District Court for the Eastern District of New York (Ross, *J.*) granting defendants' motion to dismiss for failure to state a claim and dismissing his complaint with prejudice. Steinhardt, on behalf of himself and a putative class of shareholders in Genesco, Inc. ("Genesco"), brought suit against defendants UBS Securities LLC and UBS Loan Finance LLC (collectively, "UBS"), asserting one count of intentional interference with a business relationship under Tennessee law. Steinhardt alleges that UBS improperly thwarted a planned merger between Genesco and The Finish Line, Inc. ("Finish Line"), thus depriving him and other Genesco shareholders of their expectancy that Finish Line would pay them $54.50 per share in cash upon completion of the merger. We assume the parties' familiarity with the facts and procedural history of this case.

"A district court's decision granting a motion to dismiss is subject to *de novo* review. As a matter of substance, to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Kuck v. Danaher*, 600 F.3d 159, 162 (2d Cir. 2010) (alteration, citation, and internal quotation marks omitted).

The sole cause of action in Steinhardt's complaint is for intentional interference with a business relationship under Tennessee law. To sustain such a claim, the plaintiff must show:

(1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others

2

in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's improper motive or improper means; and finally, (5) damages resulting from the tortious interference.

*Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002) (footnotes, citation, and emphasis omitted). The dispute here centers on the first element of this tort.

As to the scope of relationships cognizable under this tort, the Tennessee Supreme Court adopted the definition of this element set forth in the *Restatement (Second) of Torts*, *id.* at 701 n.4, which provides in relevant part:

> The relations protected against intentional interference . . . include any prospective contractual relations, except those leading to contracts to marry, if the potential contract would be of pecuniary value to the plaintiff. Included are interferences with the prospect of obtaining employment or employees, the opportunity of selling or buying land or chattels or services, and any other relations leading to potentially profitable contracts. Interference with the exercise by a third party of an option to renew or extend a contract with the plaintiff is also included. Also included is interference with a continuing business or other customary relationship not amounting to a formal contract. In many respects, a contract terminable at will is closely analogous to the relationship covered by this Section.

> The expression, prospective contractual relation, is not used . . . in a strict, technical sense. It is not necessary that the prospective relation be expected to be reduced to a formal, binding contract. It may include prospective quasi-contractual or other restitutionary rights or even the voluntary conferring of commercial benefits in recognition of a moral obligation.

*Restatement (Second) of Torts* § 766B cmt. c (1979) (citations omitted). In addition, citing policy concerns discussed by the Tennessee Supreme Court in *Trau-Med*, Tennessee's intermediate appellate court has cautioned that in interpreting the scope of this tort, "we must be mindful to avoid unintentional consequences that may serve to negatively impact competition in the marketplace and weaken the contract as a cornerstone of our business community and economy." *Watson's Carpet & Floor Coverings, Inc. v. McCormick*, 247 S.W.3d 169, 177 (Tenn. Ct. App. 2007). That court observed in particular: "Given the protection and dignity

3

afforded contractual relationships in this state, it would be contrary to sound public policy to inadvertently extend a *greater* protection to relationships where the parties themselves are not bound (non-contractual) or where the existence of the relationship itself is uncertain (prospective relationships)." *Id.*; *see also Strategic Capital Res., Inc. v. Dylan Tire Indus., LLC*, 102 S.W.3d 603, 609 n.2 (Tenn. Ct. App. 2002) (declining to recognize claim for intentional interference with non-contractual relationships where plaintiff's allegations that various parties were subject to binding contracts lacked merit, and "[t]here d[id] not appear to be anything in the record to indicate a business relationship between the parties outside of the contracts" at issue).

The district court concluded that Steinhardt's complaint must be dismissed because it failed to plead facts sufficient to support an inference of an existing or prospective relationship between Genesco's shareholders and Finish Line under Tennessee law. We agree with that conclusion. For the following reasons, the expectancy of Genesco's shareholders in the cash consideration offered by Finish Line in connection with the planned merger is not the sort of relationship that is cognizable under this tort.

As the district court correctly noted, Steinhardt's complaint alleged only "interference with an existing business relationship," J.A. 48, and did not indicate that his claim was based on an alleged prospective relationship. Yet his complaint is devoid of any suggestion of an existing relationship of any sort between Steinhardt and Finish Line. Steinhardt does not contend that he and other Genesco shareholders were parties to the merger agreement between Genesco and Finish Line. What is more, that agreement unmistakably states that third parties are not entitled to claim "any right, benefit or remedy of any nature" thereunder. *Id.* at 116. Apart from this agreement to which he is not a party and under which he cannot claim any benefit, Steinhardt

4

fails to allege any relationship between Genesco's shareholders and Finish Line that was in existence at the time of UBS's allegedly tortious conduct, and certainly not the type of ongoing *business* relationship that has been recognized by Tennessee's courts as sufficient for this tort. *Cf. Trau-Med*, 71 S.W.3d at 701 (involving, *inter alia*, existing relationship between plaintiff — a medical clinic for indigent and uninsured personal injury victims — and attorneys who referred patients to the clinic); *Watson's Carpet*, 247 S.W.3d at 172-73 (involving, *inter alia*, existing relationship between plaintiff — a carpet dealer — and a customer to which it supplied carpet).

Despite Steinhardt's failure to label his cause of action as such, the district court considered whether the complaint sufficiently alleged a *prospective* relationship, and concluded in the negative. We agree with that holding as well. The *Restatement (Second) of Torts*, which enumerates the sorts of "prospective contractual relations" that are protected under this tort, makes no suggestion that a shareholder's contingent interest in compensation for his shares following a successful merger is included in this category. To be sure, as Steinhardt argues, if the merger had closed and if Finish Line had failed to pay its promised consideration for the Genesco shares, Genesco's shareholders might have a right under Tennessee's business statutes to sue Finish Line directly for payment. *See* Tenn. Code Ann. § 48-21-108(a)(7). But even assuming *arguendo* that in those circumstances Genesco's shareholders might have a statutory, quasi-contractual, or even contractual right to payment from Finish Line, this mere contingency does not establish the type of prospective relationship protected under Tennessee law. This tort "always involves the protection of a *voluntary* relationship," *Watson's Carpet*, 247 S.W.3d at 185 (emphasis added); Steinhardt's speculation as to the rights Genesco's shareholders might have had in the improbable hypothetical scenario where the merger had closed but Finish Line

5

had failed to pay does not describe a potential relationship that is voluntary in nature.

Our conclusion is buttressed by the policy concerns that Tennessee courts have articulated with respect to this tort. If we were to allow Steinhardt to recover in tort in these circumstances, we would risk protecting non-contractual or prospective relationships to an extent that derogates "the protection and dignity afforded contractual relationships" by Tennessee courts. *Id.* at 177. In our view, Tennessee courts would not permit such a claim to proceed where, as here, the alleged non-contractual or prospective relationship is substantially derivative of underlying contracts to which the plaintiff is neither a party nor a beneficiary. *See Strategic Capital*, 102 S.W.3d at 609 n.2.

For these reasons, we affirm the district court's dismissal of the complaint, with prejudice, for failure to allege a prospective or existing relationship between Steinhardt and Finish Line under Tennessee law. We have considered Steinhardt's remaining arguments, including his reliance on non-Tennessee authorities, and find them to be without merit.[1]

Accordingly, for the foregoing reasons, the judgment of the district court is hereby **AFFIRMED**.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

---

[1] Because we affirm on the ground that Steinhardt failed to state a claim, we need not reach UBS's alternative argument for dismissal on the basis of *res judicata*.