FILED
02/28/2017
Clerk of the
Appellate Courts



IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 18, 2017 Session

## JONATHAN HARPER v. STEVE HARRIS, ET AL.

**Appeal from the Juvenile Court for Robertson County**
No. 08-32042        Joel Perry, Judge

_____

**No. M2016-00564-COA-R3-JV**

_____

This appeal involves a father's petition to modify an order granting custody of his minor child to the maternal grandparents. The father alternatively requested an order granting him specific visitation. The juvenile court dismissed the petition on the grandparents' motion. After our review of the petition, we conclude the juvenile court appropriately dismissed father's request for a change of custody based solely upon the presumption of superior parental rights. But the court erred in dismissing the father's request for visitation. Accordingly, we affirm in part and reverse in part.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed in Part; Reversed in Part; and Remanded**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

B. Nathan Hunt, and Zachary L. Talbot, Clarksville, Tennessee, for the appellant, Jonathan Harper.

Jennifer L.E. Williams, Springfield, Tennessee, for the appellees, Steve Harris and Faith Harris.

### OPINION

#### I. FACTUAL AND PROCEDURAL BACKGROUND

Stephanie Anne Harper ("Mother")[1] and Jonathan Harper ("Father") are the biological parents of a minor child, Lexi, born in 2005. Steve and Faith Harris ("Grandparents") are the child's maternal grandparents.

---

[1] Though named as a party in the proceedings below, Mother is not a party on appeal.

On January 4, 2006, Grandparents filed an emergency petition for temporary custody of the child in the Juvenile Court for Robertson County, Tennessee. The petition alleged that Mother, Father, and Lexi had resided in Grandparents' home since May 2005 and that both parents had since moved out, leaving the child in Grandparents' care. It further alleged that the child was "in immediate risk of harm," citing Father's violent history and Mother's instability.[2] On the same day, the juvenile court granted emergency temporary custody to Grandparents after finding probable cause to believe that the child was dependent and neglected.

After a preliminary hearing on January 13, 2006, at which Mother, Father, Grandparents, and two additional witnesses testified, the court again found probable cause to believe that the child was dependent and neglected. The juvenile court ordered that temporary legal custody remain with Grandparents, granted separate visitation to the parents, and ordered both parents to pay child support. A final adjudicatory hearing was scheduled for February 15, 2007; however, the hearing never took place.

On October 26, 2006, Grandparents filed a motion to change Father's visitation from unsupervised to supervised because, according to the motion, he had been charged with physically assaulting Mother. Grandparents also filed a motion for default judgment, asking the magistrate judge to grant them permanent custody because neither parent had responded or filed an answer to the petition. Both motions were scheduled to be heard on November 2, 2006. The certificate of service on the motion for default judgment indicated that a copy of the motion was mailed or hand-delivered to Father on October 24, 2006, at an address in Missouri where Father had allegedly moved.

Father did not appear at the November 2, 2006 hearing. After hearing oral argument and reviewing the record, the magistrate judge granted a default judgment against both parents "due to their failure to file an answer to the petition," granted custody to Grandparents, and suspended Father's visitation. The court further ordered the final hearing scheduled for February 15 to be removed from the docket. Again, according to the certificate of service, a copy of the order was mailed or hand-delivered to Father at the same Missouri address on November 14, 2006.[3]

Father did not appeal the 2006 custody order. However, in the decade following its entry, Father made several filings seeking to modify the custody arrangement. First,

---

[2] Specifically, according to the petition, Mother had been admitted to the Middle Tennessee Mental Health Institute, and Father had "left the mother and child in November of 2005 and ha[d] not returned to visit . . . ."

[3] An amended order with minor corrections was entered on November 22, 2006, and delivered to Father in the same manner.

on January 28, 2010, Father filed a notice of appearance and, on March 10, 2010, filed a petition to modify custody. After a hearing, the magistrate judge declined to modify custody because Father failed to establish a material change in circumstances sufficient to alter the primary residential parent. Father did not appeal the decision.

Next, in June 2010, Father filed a motion seeking a specific visitation schedule. The magistrate judge awarded him a limited amount of visitation pending a hearing on his motion, but Father withdrew his motion before the hearing.

Finally, on April 21, 2015, Father filed a new petition for custody, or in the alternative, for entry of a parenting plan setting specific parenting time. The petition did not assert a material change of circumstances had occurred. Instead, Father claimed that the magistrate judge should have granted him custody in 2010 based on his superior rights as the natural parent.

Thereafter, Grandparents filed a motion to dismiss Father's petition for failure to state a claim upon which relief can be granted. Grandparents' motion asserted, among other things, that Father's claim of superior parental rights was barred under the doctrine of res judicata. The magistrate judge granted the motion.

Father then filed a timely request for rehearing by the juvenile court. On October 27, 2015, after oral argument, the juvenile court affirmed the decision of the magistrate judge.[4] Father appeals the juvenile court's decision.

## II. ANALYSIS

Under the then applicable Rules of Juvenile Procedure,[5] the Tennessee Rules of Civil Procedure applied to child custody proceedings in juvenile court. Tenn. R. Juv. P. 1(b). Rule 12.02 of the Tennessee Rules of Civil Procedure permits a party to seek dismissal of a pleading on the basis that it "fail[s] to state a claim upon which relief can be granted." Tenn. R. Civ. P. 12.02(6).

A Rule 12.02(6) motion to dismiss for failure to state a claim "challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence." *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011). Therefore, "[t]he resolution of a 12.02(6) motion to dismiss is determined by an examination of the pleadings alone." *Id.* In considering a 12.02(6) motion, courts must

---

[4] Subsequently, the court granted Father's motion to amend the final order to change the entry date to February 25, 2016.

[5] The General Assembly ratified amendments to the Rules of Juvenile Procedure effective July 1, 2016. H. Res. 145 & S. Res. 79, 109th Gen. Assemb., Reg. Sess. (Tenn. 2016).

"construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences." *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696 (Tenn. 2002). The complaint or petition should not be dismissed unless it appears that the plaintiff can prove no set of facts in support of his or her claim that would warrant relief. *Doe v. Sundquist*, 2 S.W.3d 919, 922 (Tenn. 1999). Making such a determination presents a question of law, and our review of a trial court's determination on issues of law is de novo, with no presumption of correctness. *Id.*

## A. FATHER'S REQUEST TO MODIFY CUSTODY

We first consider the request in Father's petition "for entry of an order granting Father custody of the [child]." As Father has conceded, his request for a change in custody is based solely upon his claim of superior parental rights.

A parent has a fundamental right, based in both the federal and State constitutions, to the care and custody of his or her own child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010). Accordingly, the Tennessee Constitution "requires that courts deciding initial custody disputes give natural parents a presumption of 'superior parental rights' regarding the custody of their children." *Blair v. Badenhope*, 77 S.W.3d 137, 141 (Tenn. 2002) *abrogated by statute on other grounds as recognized by Armbrister v. Armbrister*, 414 S.W.3d 685, 704 (Tenn. 2013). Under this doctrine of superior parental rights, courts must favor the biological parent when faced with a competing custody claim by a non-parent. *Ray v. Ray*, 83 S.W.3d 726, 732 (Tenn. Ct. App. 2001) Indeed, in an initial custody proceeding, a court cannot award custody to a non-parent over a natural parent "unless the third party can demonstrate that the child will be exposed to substantial harm if custody is awarded to the biological parent." *Id.*

However, a parent is generally not entitled to invoke the doctrine of superior parental rights when seeking to *modify* a valid order placing custody with a non-parent. *Blair*, 77 S.W.3d at 148. In such cases, trial courts "apply the standard typically applied in parent-vs-parent modification cases: that a material change in circumstances has occurred, which makes a change in custody in the child's best interests." *Id.*

Still, a natural parent can retain his or her superior parental rights despite the fact that a non-parent has been awarded custody in certain instances. Our Supreme Court, in *Blair v. Badenhope*, identified four such circumstances:

> (1) when no order exists that transfers custody from the natural parent; (2) when the order transferring custody from the natural parent is accomplished by fraud or without notice to the parent; (3) when the order transferring custody from the natural parent is invalid on its face; and (4) when the

4

natural parent cedes only temporary and informal custody to the non-parents.

*Id.* at 143.

Here, Father claims that the magistrate judge should have granted him custody in 2010 because, despite the 2006 order granting custody to Grandparents, he retained his superior parental rights under the reasoning of *Blair v. Badenhope*. First, the petition asserts that Father did not receive "proper notice" of the motion for default judgment in the 2006 dependency and neglect case, citing to Rules 55.01, 6.01, and 6.05 of the Tennessee Rules of Civil Procedure.[6] Second, Father contends that the facts alleged in his petition establish that the 2006 custody order was invalid on its face.[7]

Even so, after our review of the 2015 petition, we agree with Grandparents that Father's claim of superior parental rights is barred by the doctrine of res judicata. Res judicata is "[a]n issue that has been definitively settled by judicial decision." Black's Law Dictionary (10th ed. 2014); *see also Regions Fin. Corp. v. Marsh USA, Inc.*, 310 S.W.3d 382, 392 (Tenn. Ct. App. 2009). The doctrine of res judicata is a "rule of rest" meant to promote finality, prevent inconsistent or contradictory judgments, conserve resources, and prevent vexatious lawsuits. *Jackson v. Smith*, 387 S.W.3d 486, 491 (Tenn. 2012); *see also Edwards v. City of Memphis*, No. W2007-02449-COA-R3-CV, 2009 WL 2226222, at *3 (Tenn. Ct. App. July 27, 2009). The term "res judicata" often refers generally to the effect that a judgment may have on subsequent proceedings. Black's Law Dictionary, *supra*; *see also Regions*, 310 S.W.3d at 392.

One such effect is claim preclusion. The doctrine of claim preclusion "bars a second suit between the same parties or their privies on the same cause of action with respect to all issues which were or could have been raised in the former suit." *State ex rel. Cihlar v. Crawford*, 39 S.W.3d 172, 178 (Tenn. Ct. App. 2000); *see also Jackson*,

---

[6] Rule 55.01 of the Tennessee Rules of Civil Procedure provides:

> [A]ll parties against whom a default judgment is sought shall be served with a written notice of the application at least five days before the hearing on the application, regardless of whether the party has made an appearance in the action.

Tenn. R. Civ. P. 55.01. Under Rule 6.01, Saturdays, Sundays, and legal holidays are to be excluded in computing time periods shorter than eleven days. Tenn. R. Civ. P. 6.01. Additionally, Rule 6.05 requires three days to be added to the prescribed time period when notice is served by mail. Tenn. R. Civ. P. 6.05.

[7] The petition asserted that the 2006 order "contained no finding that [ ] Father posed a substantial risk of harm to the child." On appeal, Father maintains that the order did not include sufficient factual findings to award Grandparents custody over him. Additionally, Father seems to argue for the first time that the 2006 order was also invalid because granting a default judgment was procedurally improper under the Rules of Juvenile Procedure.

387 S.W.3d at 491. A party asserting claim preclusion must demonstrate: "(1) that the underlying judgment was rendered by a court of competent jurisdiction, (2) that the same parties or their privies were involved in both suits, (3) that the same claim or cause of action was asserted in both suits, and (4) that the underlying judgment was final and on the merits." *Jackson*, 387 S.W.3d at 491; *see also Edwards*, 2009 WL 2226222, at *2.

Another possible effect of a judgment is issue preclusion, also known as collateral estoppel. *State v. Thompson*, 285 S.W.3d 840, 848 (Tenn. 2009). Collateral estoppel prevents the redetermination of an issue of law or fact that has already been determined by a court of competent jurisdiction. *Cihlar*, 39 S.W.3d at 178. To invoke collateral estoppel, a party must demonstrate: (1) that the issue was determined in a prior action by the parties or their privies; (2) that the issue was necessary to the prior judgment; and (3) that a final judgment was rendered in the prior action. *In re Estate of Goza*, 397 S.W.3d 564, 570-71 (Tenn. Ct. App. 2012).

In their motion to dismiss, Grandparents argued that Father's claim of superior parental rights should be dismissed because "[a]fter entry of the order in 2006, this Court ruled on this issue . . . in 2010[,] finding that the appropriate legal standard in this case . . . to modify custody . . . is a material change of circumstances that is in the child's best interest[ ]." Res judicata is an affirmative defense that must be included in an answer. Tenn. R. Civ. P. 8.03. Our Supreme Court has indicated that res judicata may be raised in the context of a motion to dismiss for failure to state a claim upon which relief can be granted only in specific circumstances:

> For a Tenn. R. Civ. P. 12.02(6) motion to be used as a vehicle to assert an affirmative defense, the applicability of the defense must "clearly and unequivocally appear[ ] on the face of the complaint." In other words, the plaintiff's own allegations in the complaint must show that an affirmative defense exists and that this defense legally defeats the claim for relief.

*Jackson*, 387 S.W.3d at 491-92 (internal citations omitted).

Thus, in determining whether dismissal on the basis of res judicata is proper, our review is limited solely to the face of Father's 2015 petition. Regarding the 2010 proceedings, the petition states as follows:

> On March 10, 2010, Father filed a petition for change of custody, which was heard on September 30, 2010 before the Honorable Melanie Stark, Magistrate for Robertson County Juvenile Court.
>
> . . . On November 2, 2010, the Court entered an Order denying Father's petition for change of custody finding that Father had the burden to show a material change in circumstances by a preponderance of the evidence and

6

that Father had failed to meet this burden. The Court further held that T.C.A. § 36-6-101(a)(2)(B)[8] applied because Father was requesting a change of custody and not a modification of a parenting schedule.

. . . Father would respectfully contend that the Court's analysis as set forth above is misplaced.

Here, even construing the petition liberally in his favor, Father's claim of superior parental rights is barred based on his own allegations. The petition asserts that the question of whether Father retained his superior parental rights was settled in the previous juvenile court proceedings concerning his 2010 request for a change of custody—a decision that Father did not appeal. Further, the petition itself contains ample basis for concluding: (1) that the November 2, 2010 order was rendered by a court of competent jurisdiction; (2) that the 2010 petition and the 2015 petition involve the same parties; (3) that the two petitions assert the same claim; and (4) that the November 2, 2010 judgment was final and on the merits. *See Jackson*, 387 S.W.3d at 493.

The only pertinent fact that is not clear from the face of the petition is whether Father actually attempted to assert his superior parental rights before the magistrate in 2010. Even so, res judicata bars not only issues that were actually decided but also those which "*could have been raised*" in the former suit. *Cihlar*, 39 S.W.3d at 178 (emphasis added). So, even if the issue of Father's alleged superior rights was not directly addressed, determination of the issue in the present action is properly precluded under the doctrine of res judicata because the issue could have been raised in the hearing on Father's 2010 petition. Thus, the juvenile court did not err in affirming the magistrate's decision to dismiss Father's request for custody of the child.

## B. FATHER'S REQUEST FOR VISITATION

Although Father failed to state a claim for a change of custody, we conclude that the juvenile court erred in dismissing the remainder of Father's petition. The petition includes an alternative request for entry of a "parenting plan order setting forth a

---

[8] Tennessee Code Annotated § 36-6-101(a)(2)(B) provides:

If the issue before the court is a modification of the court's prior decree pertaining to custody, the petitioner must prove by a preponderance of the evidence a material change in circumstance. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance may include, but is not limited to, failures to adhere to the parenting plan or an order of custody and visitation or circumstances that make the parenting plan no longer in the best interest of the child.

Tenn. Code Ann. § 36-6-101(a)(2)(B) (Supp. 2016).

parenting schedule for Father," claiming "[t]here is currently no parenting plan or visitation schedule in effect in this matter and Father is only allowed to see the child at the sole discretion of [Grandparents]."

Grandparents, interpreting Father's claim as one for modification of the residential schedule, argue that Father did not allege facts sufficient to establish a material change in circumstance. *See* Tenn. Code Ann. § 36-6-101 (a)(2)(C) ("If the issue before the court is a modification of the court's prior decree pertaining to a residential parenting schedule, then the petitioner must prove by a preponderance of the evidence a material change of circumstance affecting the child's best interest."). We, however, interpret his second claim as a request for reinstatement of visitation, and as a non-custodial parent, Father is entitled to request as much from the juvenile court.

Our courts have long recognized "[t]he right of the non-custodial parent to reasonable visitation." *Hogue v. Hogue*, 147 S.W.3d 245, 251 (Tenn. Ct. App. 2004) (citing *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988)). Though visitation rights may be limited or eliminated in certain circumstances, Father was entitled to a hearing on his request.

### III. CONCLUSION

Therefore, we affirm the juvenile court's dismissal of Father's request for a change of custody. However, we reverse the court's dismissal of the remainder of Father's petition and remand the case for further proceedings not inconsistent with this opinion.

_____
W. NEAL MCBRAYER, JUDGE