# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
March 10, 2010 Session

## BAIRD TREE COMPANY, INC. v. CITY OF OAK RIDGE, ET AL.

**Appeal from the Circuit Court for Anderson County**
**No. A7LA-0505      Donald R. Elledge, Judge**

_____

**No. E2009-01094-COA-R3-CV - FILED APRIL 26, 2010**

_____

In 2004, Baird Tree Company, Inc. ("Baird Tree") unsuccessfully bid on a tree trimming and removal project with the City of Oak Ridge ("Oak Ridge"). Baird Tree filed a lawsuit claiming, *inter alia*, that Oak Ridge's bidding process violated the Tennessee Trade Practices Act, Tenn. Code Ann. § 47-25-101. We affirmed the Trial Court's grant of summary judgment to the defendants because the contract at issue was a contract for services, not goods, and, therefore, the Tennessee Trade Practices Act did not apply. We also concluded that Baird Tree could not challenge the bidding process because it had failed to submit a valid bid in the first place. *See Baird Tree Co., Inc. v. City of Oak Ridge*, No. E2007-01933-COA-R3-CV, 2008 WL 2510581 (Tenn. Ct. App. June 24, 2008). When the same project came up for bid in 2007, Baird Tree again submitted a fatally defective bid. When it was not awarded the contract, Baird Tree filed the present lawsuit raising various challenges to Oak Ridge's bidding process. The Trial Court granted summary judgment to all defendants. We, again, conclude that Baird Tree does not have standing to challenge the bidding process because it submitted a fatally defective "bid" in the first place. The judgment of the Trial Court is, therefore, affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the
Circuit Court Affirmed; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

David H. Dunaway, LaFollette, Tennessee, for the Appellant, Baird Tree Company, Inc.

Benjamin K. Lauderback, Knoxville, Tennessee, for the Appellees, City of Oak Ridge and Jerry Dover, individually and as Electric Operations Manager for the City of Oak Ridge.

Frank M. Fly, Murfreesboro, Tennessee, for the Appellee, Seelbach and Company, Inc.

William A. Blue, Jr., Nashville, Tennessee, for the Appellee, Environmental Consultants, Inc.

## OPINION

### Background

This is the second occasion we have had to consider an appeal from two different lawsuits involving the same primary parties and virtually identical subject matter. The present lawsuit was filed in September 2007 by Baird Tree against several defendants, including Oak Ridge. In a nutshell, Baird Tree claimed that it was improperly excluded from bidding on a tree trimming and tree removal contract that was opened for bids by Oak Ridge in 2007.

This is not the first time Baird Tree has made such a claim. In fact, Baird Tree filed a previous lawsuit in 2004 when an earlier tree trimming and tree removal contract was awarded by Oak Ridge to Seelbach and Company ("Seelbach"). Seelbach has been a defendant in both lawsuits. In the first lawsuit, Baird Tree claimed, among other things, that the defendants had violated the Tennessee Trade Practices Act, Tenn. Code Ann. § 47-25-101, *et seq.*, (the "TTPA"). The Trial Court granted summary judgment to the various defendants after finding: (1) the TTPA did not apply to the tree trimming and removal contract at issue because it was a contract for services, as opposed to goods; and (2) Baird Tree lacked standing to pursue the claims set forth in the complaint because it never submitted a valid bid in the first place.

Baird Tree appealed the Trial Court's grant of summary judgment to the defendants. In June 2008, this Court affirmed the judgment of the Trial Court in *Baird Tree Co., Inc. v. City of Oak Ridge*, No. E2007-01933-COA-R3-CV, 2008 WL 2510581 (Tenn. Ct. App. June 24, 2008), *no appl. perm. appeal filed* ("*Baird I*"). Due to the relevance of and similarities between *Baird I* and the present appeal, we will quote heavily from our earlier Opinion:

> Oak Ridge began accepting bids in July of 2004 for a two
> year project involving tree trimming, tree removal, brush and
> limb chipping, etc. Plaintiff was one of three bidders on this

project. The two other bidders were Wolf Tree Trimming ("Wolf Tree") and Seelbach and Company, Inc. ("Seelbach"). After bidding was completed and the contract was awarded to Seelbach, Plaintiff filed this lawsuit primarily alleging that the bidding process was improper and Plaintiff was the lowest bidder and should have been awarded the contract. Plaintiff also claimed that Oak Ridge violated the Tennessee Trade Practices Act, Tenn. Code Ann. § 47-25-101, *et seq*. (the "TTPA"). Plaintiff sought compensatory damages in the amount of profit it would have realized had it been awarded the contract.

Oak Ridge filed a motion for summary judgment claiming, *inter alia*, that the undisputed material facts established that it was entitled to a judgment as a matter of law because: (1) Plaintiff's bid failed to meet the necessary bidding requirements; (2) even if Plaintiff's bid did meet the necessary requirements, Plaintiff's bid was not the lowest bid; and (3) Plaintiff failed to state a claim upon which relief could be granted under the TTPA.

*Id.*, at * 1 (footnote omitted).

As stated, one of the issues in *Baird I* was whether Baird Tree even had submitted a valid bid and, if not, whether that failure had any impact on the claims raised in the complaint. The defendants argued that Baird Tree's "bid" was woefully inadequate due primarily to Baird Tree's intentional refusal to provide much of the requested information. There was a substantial amount of proof on this issue:

One of the exhibits is an August 20, 2004, letter from Jerry Dover ("Dover"), the Electric Operations Manager for Oak Ridge. This letter was sent to Mr. Bobby Baird, the owner and president of plaintiff Baird Tree Company, Inc. Dover's letter concerned the bid that had been submitted by Plaintiff. In this letter, Dover stated that Oak Ridge was "having difficulty determining your firm's qualifications and ability to perform the work as outlined in the bid documents." The letter then provides a detailed description of additional information needed by Oak Ridge. According to the letter, Plaintiff's bid did not provide three references for whom work similar to that being bid on was performed. Next, the bid documents required Plaintiff

-3-

to furnish a list of five "right of way and tree trimming/herbicide application (spraying) contracts performed in the last twelve months." According to Dover, this information was not supplied by Plaintiff. Finally, Dover stated that Plaintiff had not complied with the requirement in the bid documents to furnish a list of all contracts presently being performed. The letter then states:

> This letter is to advise you that the information supplied with the bid is inadequate in that the information requested under this item was not supplied. Please supply a list of all such similar contracts presently being performed along with the names and telephone numbers of the persons with whom the contractor has primary contact. If your firm has no such contracts, so state in your reply.
>
> The City wishes to proceed with summarizing of the bid responses to the referenced contract as expeditiously as possible. Please furnish the requested information and clarifications in writing by the close of business August 25th, 2004.

On August 23, 2004, Mr. Baird sent a response to Dover's letter. In this letter, Mr. Baird flat out refused to supply any additional information. Mr. Baird's response states, in part, as follows:

> On August 23, 2004, I received a letter from you in which you required a detailed response by August 25, 2004. I find this to be an unreasonable request and in the interest of time and brevity this letter is hereby forwarded.
>
> In response to your letter the following information is submitted:

-4-

A) This company has submitted to you adequate information regarding the references and evidence of outstanding execution and workmanship.

B) Baird Tree Company, Inc. has all required State Licenses for Tree Trimming and Brush Control along overhead power lines.

It is my belief that your additional requirements are onerous in that they are particularly prejudicial to small, locally owned businesses.…

In your letter, you have placed tremendous emphasis on requesting an in depth detailed listing of erroneous requirements.…

In closing, *we will follow up by submitting to you a list of questions we would like answered* concerning the verification process utilized to confirm your current contractors are meeting contract specifications. (emphasis added)

Not surprisingly, Mr. Baird was questioned during his deposition about the contents of his response. When he was asked why Plaintiff did not send any additional information to Oak Ridge as requested in the letter dated August 20, 2004, Mr. Baird stated: "I guess we felt we'd give them all the information that was necessary." Mr. Baird admitted at his deposition that Plaintiff was unable to furnish some of the additional requested information. For example, Plaintiff did not have five right of way and tree trimming/herbicide application contracts in the past year. Mr. Baird also testified that Oak Ridge's requirement that a bidder have a certain number of crews was "unreasonable." When Oak Ridge pressed Mr. Baird for an explanation as to why he felt the bidding requirements were unreasonable, Mr. Baird stated that be believed it was because Oak Ridge was trying to create bidding requirements specifically to exclude Plaintiff from being able to successfully bid on the contract. When asked why Oak Ridge would try to

do that, Mr. Baird stated "I don't know." Mr. Baird admitted that neither he nor his company ever had problems with anyone in the past, with the possible exception of Dover whom Mr. Baird claimed on one occasion spoke to him with a "tone of the voice" that Mr. Baird did not like.

As to Mr. Baird's assertion that the needed number of crews was unreasonable, the documents created by Oak Ridge when analyzing the bids provide as follows as to the crews available for Plaintiff:

> Bidder lacks depth in number of crews. There is concern if a major storm event were to occur that other utilities in the area would be affected and would not release the contractor's crews.

Plaintiff presented nothing in the record to indicate that Oak Ridge's concern about the number of crews Plaintiff had available was anything less than legitimate.[1]

\* \* \*

In addition to what is set forth above, there were other components of Plaintiff's bid that were incomplete or simply unresponsive to the requirements contained in the bidding documents. The following is an excerpt from Mr. Baird's deposition:

> Q. Does Baird have a substance abuse policy in writing?
>
> A. Yes.
>
> Q. Did you submit that to the City?
>
> A. No.

---

[1] There also were significant problems with the three references provided by Baird Tree. *Baird I*, 2008 WL 2510581, at \*3. For the sake of brevity, we will not detail all of those problems.

Q. Any reason why not?

A. [That is the way] we had always answered before. We had never had any problems in the past with it.…

Q. Do you have a formal, written employee-training program?

A. Yes.

Q. Did you provide a list of the requirements of that program for each class of worker as part of your bid package?

A. No.

Q. Why not?

A. I probably just answered the questions down through there like we normally had, you know. . . .

Q. Is there any reason why you did not include your safety manual with your bid?

A. We normally turn this stuff in like this, and they accept it, and we just – we thought you all would accept it like that.

The bidding contract also required the bidder to have a full-time arborist on staff. Plaintiff did not have such an employee, but instead used an arborist on a consulting basis.

*Baird I*, 2008 WL 2510581, at *1-4 (footnote added).

On appeal in *Baird I*, we initially concluded that the contract at issue was a contract for services and, therefore, the TTPA was not applicable. *Id.*, at *5-7. As to the validity of Baird Tree's underlying bid, we stated:

The next issue is whether the Trial Court erred when it determined that Plaintiff's bid was invalid. The undisputed material facts demonstrate that the bidding documents required the bidder to have a full time arborist on staff, which Plaintiff did not have. The undisputed material facts demonstrate that there were numerous deficiencies in Plaintiff's original bid. Although not required to do so, Dover sent a letter to Plaintiff's owner and president requesting the additional necessary information. Mr. Baird refused to supply any additional information and even went so far as to inform Dover that he (i.e., Mr. Baird) would be sending questions to Dover that he wanted answered. The Trial Court correctly characterized this response as being "in your face." This Court is at a loss as to how a company can send such a response to legitimate questions that were raised about its bid, and then complain when it is not awarded the bid.

Regardless of the propriety of Mr. Baird's response, the question on appeal is whether Oak Ridge successfully negated an essential element of Plaintiff's claims or conclusively established an affirmative defense. *See Blair v. West Town Mall*, 130 S.W.3d 761 (Tenn. 2004). *Before Plaintiff can claim it was entitled to be awarded the bid, it must begin by showing its bid was valid and subject to being accepted.* The undisputed material facts demonstrate that Plaintiff's bid was not valid for the numerous reasons discussed above. Consequently, Oak Ridge has successfully negated an essential element of Plaintiff's claim that it was entitled to be awarded the bid, and the Trial Court correctly granted summary judgment to Oak Ridge on that claim. . . .

Because Plaintiff did not submit a valid bid, the issue of whether Plaintiff was the lowest bidder is moot. Likewise, because Plaintiff was not a valid bidder, it has no standing to attack the validity of Seelbach's bid. Any remaining issues are rendered moot.

*Baird I*, 2008 WL 2510581, at *7-8 (emphasis added).

We now return to the present case. The contract at issue in *Baird I* had been extended for one year and was set to expire on June 30, 2007. Before opening up the bidding process for the new contract, Oak Ridge sought an independent review of its bidding process on this project. According to Jerry Dover's affidavit filed in the present case:

> Prior to putting together the pre-qualification packet, a decision was made by the City to ask for an independent third-party review of the prior contract and bid documents by a knowledgeable agency and to ask that third party to draft a pre-qualification and bid package, based on their expertise, to help streamline the process and to help the City find the most qualified vendors.
>
> The City had previously hired and worked with Environmental Consultants, Inc. (ECI)[2] to have them review the trimming practices, development inspection forms, and to train City inspectors on tree trimming inspection techniques. ECI performed this work professionally and very well. While they were engaged in those previous duties the City also learned that ECI would also review tree pruning contracts, so inquiries were made as to their ability and willingness to perform a review of the City's existing tree trimming contract and to suggest and make changes to the pre-qualification packets in an effort to streamline the bidding process and help the City locate vendors who could most efficiently help the City with its needs. ECI was hired and performed these services for the City. ECI recommended a pre-qualification process to the City [which] the City adopted in full.
>
> Based on the specific suggestions and comments from ECI the pre-qualification packages were put together and were sent out to eight vendors, including Baird Tree. (original paragraph numbering omitted; footnote added)

---

[2] Environmental Consultants, Inc., also is a named defendant in the present case.

As set forth in Dover's affidavit, the pre-bid qualification package was sent to Baird Tree and seven other companies.[3]  The seven other companies submitted complete responses to the package.  Baird Tree submitted the following response[4]:

The qualification requirements are as follows:

- Licensed to provide Utility Line Clearance Services in the State of Tennessee.

  **#00021425 Unlimited s-Right of Way/Tree Trimming**

- Acknowledgment that the company will name the City of Oak Ridge as an additional insured on its insurance policy for this project.

  **We Acknowledge**

- Ability to comply with all applicable security requirements and regulations of the U.S. Department of Energy while performing work within secured areas of the Oak Ridge National Laboratory, Y-12 Plant, K-25 Plant, and the City's Waste Water Treatment Plant.

  **Accepted**

- ISA Certified Arborist on staff, at management level. Indicate the person with the certification by name and title, length of employment with company, and copies of certifications/licenses.

  **Certified Contractor will be available**

- Tennessee Licensed pesticide applicator in the right-of-way category.

  **Tennessee Charter #478**

---

[3] Three of these other companies apparently have the same parent company.

[4] We have altered Baird Tree's answers by putting them in bold type.

-10-

- Documented experience performing similar services for at least three (3) electric utilities in the Southeast.

  **Knoxville Utilities - Lenoir City Utilities - Rockwood Utilities**

- Documented safety program and provide a copy of the company's safety manual.

  **Available at our office - will provide if selected**

- Documented substance abuse policy and any drug-screening program.

  **Available at our office - will provide if selected**

- Documented training program of proper tree pruning practices following ANSI A-300 Guidelines to protect the Health and Condition of Trees.

  **Will meet requirements if selected**

- At least $20,000,000 in documented utility line clearance business in each of the last five (5) years. Include Utility name and Utility address. Provide full contact information including name, address, phone and fax numbers and email address.

  **Enormously unreasonable**

- Inventory of equipment, including age, that will be available for this project.

  **5 years or newer available**

- Documented ability to provide assistance with storm related restoration with references of utilities where these services were provided. References shall include full contact information including name, address, phone and fax numbers and email address.

-11-

**Enormously unreasonable**

•  Acknowledgment that the company will obtain a completion and performance bond, as well as a labor and material bond, in the amount of one hundred percent (100%) of the contract price with good and sufficient surety acceptable to the City in connection with this project.

**Will provide**

•  Acknowledgment that no officer or employee of the City of Oak Ridge has a financial interest in the company.

**Acknowledged**

•  Acknowledgment that the company will comply with all federal, state, county and local laws, ordinances, statutes, and regulations applicable to this project. . . .

**Acknowledged**

•  Completion of the attached Safety Experience Data Sheet.

**Attached**

•  City of Oak Ridge Business License

**Will provide if awarded contract**

Although Baird Tree indicated that it had *completed* the Safety Experience Data Sheet, it had not. The first two questions on the Safety Experience Data Sheet asked Baird Tree to list the company's Interstate Modification Rate for the past three years, and to indicate the number of employee injuries using last year's TOSHA/OSHA report. Baird Tree stated this information was "**Unavailable at this time.**" While Baird Tree indicated that it conducts documented safety inspections and has a safety representative who visits and audits the job sites, Baird Tree did not respond when asked the frequency that these events occur. Finally, Baird Tree was asked to submit evidence of its present safety program and practices,

including its safety manual.  Baird Tree responded: "**Available at our office - will provide if selected**."

In the 2007 complaint, Baird Tree again claimed a violation of the TTPA, as well as an illegal restraint of trade in violation of the common law.  Baird Tree further asserted claims for tortious interference with prospective economic advantage.  Baird Tree sued Oak Ridge, as well as Jerry Dover, its Electric Operations Manager.  Dover was sued in both his official and individual capacities.  As noted earlier in this Opinion, Baird Tree also sued ECI and Seelbach.  Baird Tree sought compensatory damages not to exceed $1,000,000, and punitive damages not to exceed $9,000,000.

In May of 2009, following extensive argument by counsel for all parties, the Trial Court granted all of the defendants' motions for summary judgment.  The Trial Court first acknowledged our holding in *Baird I* that the TTPA applied to tangible goods, not intangible services, "[a]nd that is what this contract is for, it's for services, tree pruning, tree removal, et cetera, so that portion of the Motion should be granted."  The Trial Court then stated, among other things:

> "[I]n lieu of setting the parameters [of the contract] again, [the City of Oak Ridge] hired a consultant to set the parameters and they followed the consultant.  That is an undisputed fact, they followed the consultant's . . . requests and advice, that's what they paid them for in terms of setting the qualifications for bid.
>
> Filed as . . . Collective Exhibit H, there was a pre-bid package.  The City of Oak Ridge even submitted to Baird Tree Company a request for proposal . . . and notified them of the new bid that was coming out.
>
> Again, bear in mind that this is while the previous case was pending, and Mr. Baird, again, left off, one, two, three, four, five, six, seven, eight, eight qualifications, those that were listed in Exhibit H . . . .
>
> Again, it's kind of like an "in your face", but the issue is whether he would have had to submit a proposal at all because his allegation is that it was a . . . [common law] unreasonable restraint of trade for services.

The undisputed fact is that the City of Oak Ridge acted on the advice . . . of a retained consultant, Environmental Consultant, a/k/a ECI, Inc. There was nothing to refute that. . . . Regardless of the amount [of documented utility line clearance business in each of the last five years that each bidder was required to have], that is what their consultant advised in response to that. . . . That is an undisputed fact. That is what their consultant advised them to do, and that's not an unlawful restraint of trade. They acted on the recommendations of the consultant that they hired to do this job.

\* \* \*

Let me again make it very abundantly clear. Just as we did in [*Baird I*,] in the pre-qualifications, Mr. Baird still to this day has not filed anything that would even make him qualify. If he had requested a – if he didn't like the $20,000,000.00 and requested a modification or whatever, but he still doesn't have an arborist. He still doesn't have an arborist.

You know, again, it's part of the "in your face" thing that he has done . . . . Whether he bid or didn't bid, he didn't even qualify. Not counting the $20,000,000.00, there are many numerous things that I read off in this case. He didn't qualify, regardless. You can set aside the $20,000,000.00, he wouldn't have been valid to begin with. . . .

I don't find that this in any way meets *Trau-Med of America v. Allstate Insurance Company*, [71 S.W.3d 691 (Tenn. 2002)]. . . .

I specifically find that had the $20,000,000.00 not even been in there, he wouldn't have qualified anyway regardless of the fact that he didn't even bid on this case. So Motion is granted . . . .

Following the hearing, the Trial Court adopted all of its rulings made from the bench and entered an order stating as follows:

1.      That the State of Tennessee does not recognize a common law restraint of trade civil action. This claim is dismissed as a matter of law.

2.      The Tennessee Trade Practices Act does not apply to contracts for services, and this civil action concerns contracts for services, as recognized by the Court of Appeals in *Baird I*. . . . This claim is dismissed as a matter of law.

3.      For reasons discussed at oral argument, including the Defendant, Jerry Dover's argument that he is immune from prosecution on the Plaintiff's claim for intentional interference with business relationships under the Tennessee Governmental [Tort] Liability Act, the Court grants the Defendant, Jerry Dover's Motion for Summary Judgment. Further, the claim for punitive damages against the Defendants, City of Oak Ridge and Jerry Dover, are also dismissed as a matter of law.

4.      The Defendants, City of Oak Ridge, Jerry Dover and Environmental Consultants, Inc., successfully have negated essential elements of plaintiff's claims alleging intentional interference with business relationships or shown plaintiff cannot prove essential elements of these claims at trial, for the reasons set forth in the Court's ruling from the bench. These claims are dismissed.

5.      The Court finds that the Plaintiff has not stated a cause of action against Defendant Seelbach directly and that the Defendant Seelbach was made a party because the Defendant Seelbach was the successful bidder. The Court finds that the Defendant Seelbach is, therefore, not directly liable for any claim the Plaintiff may have in this lawsuit. Furthermore, as the claims against the Defendants, City of Oak Ridge, Jerry Dover and ECI, have been dismissed, the Defendant Seelbach is also dismissed as a Defendant in this lawsuit.

6.      That because the Defendants, City of Oak Ridge, Jerry Dover, and . . . ECI have been dismissed, the Defendant Seelbach is also dismissed as a matter of law.

7. Since all parties answered the Plaintiff's Motion for Partial Summary Judgment, the Plaintiff's Motion concerning shortening the time for response to Plaintiff's Motion is therefore moot. Additionally, because this Court has dismissed this cause of action, the Plaintiff's Motion concerning requiring the Defendant, ECI, to furnish additional discovery is also now moot.

Plaintiff appeals raising numerous issues. Initially, Plaintiff claims the Trial Court erred when it granted any and all of the defendants' motions for summary judgment. Plaintiff then claims that the Trial Court erred when it dismissed his claims for a violation of the TTPA, a common law violation of restraint of trade, and for interference with prospective economic advantage.

## Discussion

Our Supreme Court reiterated the standard of review in summary judgment cases as follows:

The scope of review of a grant of summary judgment is well established. Because our inquiry involves a question of law, no presumption of correctness attaches to the judgment, and our task is to review the record to determine whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Cowden v. Sovran Bank/Cent. S.*, 816 S.W.2d 741, 744 (Tenn. 1991).

A summary judgment may be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993). The party seeking the summary judgment has the ultimate burden of persuasion "that there are no disputed, material facts creating a genuine issue for trial . . . and that he is entitled to judgment as a matter of law." *Id*. at 215. If that motion is properly supported, the burden to establish a genuine issue of material fact shifts to the non-moving party. In order to shift the burden, the movant must either affirmatively negate an essential element of the nonmovant's claim or demonstrate that the nonmoving party

-16-

cannot establish an essential element of his case. *Id.* at 215 n.5; *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 8-9 (Tenn. 2008). "[C]onclusory assertion[s]" are not sufficient to shift the burden to the non-moving party. *Byrd*, 847 S.W.2d at 215; *see also Blanchard v. Kellum*, 975 S.W.2d 522, 525 (Tenn. 1998). Our state does not apply the federal standard for summary judgment. The standard established in *McCarley v. West Quality Food Service*, 960 S.W.2d 585, 588 (Tenn. 1998), sets out, in the words of one authority, "a reasonable, predictable summary judgment jurisprudence for our state." Judy M. Cornett, *The Legacy of Byrd v. Hall: Gossiping About Summary Judgment in Tennessee*, 69 Tenn. L. Rev. 175, 220 (2001).

Courts must view the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party. *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997). A grant of summary judgment is appropriate only when the facts and the reasonable inferences from those facts would permit a reasonable person to reach only one conclusion. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000). In making that assessment, this Court must discard all countervailing evidence. *Byrd*, 847 S.W.2d at 210-11. Recently, this Court confirmed these principles in *Hannan*.

*Giggers v. Memphis Housing Authority*, 277 S.W.3d 359, 363-64 (Tenn. 2009).

We affirm the Trial Court's judgment in the present case for one of the same reasons we affirmed its judgment in *Baird I*. Specifically, Baird Tree never submitted a valid bid and, therefore, lacks standing to challenge the validity of the bidding process. With respect to the 2007 bidding process, the "bid" submitted by Baird Tree was deficient in many ways: (1) Baird Tree (still) did not have a certified arborist on staff, as required by the express terms of the pre-qualification package; (2) Baird Tree refused to provide a copy of its safety manual unless it was the winning bidder; (3) Baird Tree refused to provide a copy of its substance abuse policy unless it was the winning bidder; (4) Baird Tree refused to document its "ability to provide assistance with storm related restoration with references of utilities where these services were provided," choosing instead to simply refer to this requirement as "Enormously unreasonable"; (5) Baird Tree failed to complete the Safety Experience Data Sheet; (6) Baird Tree refused to furnish a copy of its Oak Ridge business license; and (7) Baird Tree failed to demonstrate that it had "[a]t least $20,000,000 in documented utility line clearance business in each of the last five (5) years," again referring

-17-

to this requirement as "Enormously unreasonable."[5] We think Baird Tree's bid was properly characterized by counsel for ECI at oral argument on the motion for summary judgment wherein counsel stated: "Quite frankly, Your Honor, what they did is they flipped them off." Counsel correctly added that Baird Tree then refused to answer many questions, including the question requesting $20,000,000 in documented utility line clearance business in each of the last five years.

As we stated in *Baird I*:

> The Trial Court correctly characterized [Baird Tree's response to Oak Ridge's request for additional information] as being "in your face." This Court is at a loss as to how a company can send such a response to legitimate questions that were raised about its bid, and then complain when it is not awarded the bid.
>
> Regardless of the propriety of Mr. Baird's response, the question on appeal is whether Oak Ridge successfully negated an essential element of Plaintiff's claims or conclusively established an affirmative defense. *See Blair v. West Town Mall*, 130 S.W.3d 761 (Tenn. 2004). Before Plaintiff can claim it was entitled to be awarded the bid, it must begin by showing its bid was valid and subject to being accepted. The undisputed material facts demonstrate that Plaintiff's bid was not valid for the numerous reasons discussed above. Consequently, Oak Ridge has successfully negated an essential element of Plaintiff's claim that it was entitled to be awarded the bid, and the Trial Court correctly granted summary judgment to Oak Ridge on that claim.

---

[5] Baird Tree's challenge to the pre-qualification package centers around the requirement that it have "[a]t least $20,000,000 in documented utility line clearance business in each of the last five (5) years." Baird Tree claims that it was this requirement that was improperly added for the sole purpose of excluding smaller companies such as Baird Tree from consideration. Had this been the only requirement in the pre-qualification package that Baird Tree failed to meet, then our conclusion as to whether Baird Tree had standing likely would be different. If we held that the failure to meet a challenged requirement, in and of itself, resulted in a lack of standing, then someone illegally excluded would never be able to challenge the propriety of the bid's requirements. That is not our holding here because Baird Tree's failures with respect to the bid it actually submitted far exceeded simply failing to have "[a]t least $20,000,000 in documented utility line clearance business in each of the last five (5) years."

*Baird I*, 2008 WL 2510581, at * 7.

We now face that same issue once more. We, again, are at a loss as to how a company can submit an altogether inadequate and incomplete bid on a project, and then complain when it is not awarded that project. "Before [Baird Tree] can claim it was entitled to be awarded the bid, it must begin by showing its bid was valid and subject to being accepted." *Id*. To hold otherwise, literally, would allow anybody with a chainsaw, even though he did not complete the bid documents, to mount an attack to Oak Ridge's bidding process simply by claiming they were improperly excluded. This is an untenable result and would significantly disrupt a legitimate bidding process.

We conclude, as we did in *Baird I*, that Oak Ridge successfully negated an essential element of Baird Tree's claim that it was entitled to be awarded the bid, and the Trial Court correctly granted summary judgment on that claim. Because Baird Tree never submitted a valid bid in the first place and lacks standing to challenge the bidding process, all remaining issues as to all defendants are moot.[6]

### Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Anderson County Circuit Court solely for collection of the costs below. Costs on appeal are taxed to the Appellant, Baird Tree Company, Inc., and its surety, for which execution may issue, if necessary.

_____
D. MICHAEL SWINEY, JUDGE

---

[6] Because Baird Tree never submitted a valid bid in the first place, this failure, likewise, would negate any claim for damages allegedly resulting from Baird Tree not being awarded the contract.