# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### October 18, 2016 Session

## CLEAR WATER PARTNERS, LLC v. CHARLES E. BENSON, ET AL.

### Appeal from the Chancery Court for Knox County
### No. 190254-2     Clarence E. Pridemore, Jr., Judge
_____

### No. E2016-00442-COA-R3-CV – Filed January 26, 2017
_____

A purchaser of property filed a complaint against numerous individuals asserting intentional interference with its business relationships and tortious interference with its contracts based on the individuals' alleged misconduct aimed at preventing the development of the property the purchaser was attempting to acquire. The defendants filed motions to dismiss based on Tennessee Rules of Procedure 10.03 and 12.02(6), which the trial court granted. The trial court also awarded the defendants their attorneys' fees pursuant to Tenn. Code Ann. § 4-21-1003(c). The plaintiff appealed, and we find the plaintiff properly stated a claim for tortious interference with business relationships and civil conspiracy; the plaintiff did not state a claim for tortious interference with contracts; and the defendants are not entitled to an award of their attorneys' fees at this stage of the proceedings.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Vacated in Part, and Remanded

ANDY D. BENNETT, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON, II, J., joined.

David J. Silvus, Clarksville, Tennessee, for the appellant, Clear Water Partners, LLC.

John A. Lucas and Nicholas W. Diegel, Knoxville, Tennessee, for the appellees, Charles E. and Rebecca Benson, Russ and Tracy Ford, Frank and Belinda Gambuzza, Cheryl and Dennis Hatcher, Mark and Kathy Jackson, Glenn Loy, Mark and Virginia Smothers, Robert Whitaker, Michael and Sherry Whitaker, Sharon Boyce, Jack Woodall, and Susannah Sayre; and Gregory W. O'Neal, Memphis, Tennessee, for the appellee, David Kiger.

# OPINION

## I. PROCEDURAL BACKGROUND

Clear Water Partners, LLC ("Clear Water") is a limited liability company that filed a complaint in September 2015 against twenty-three individual defendants based on allegations that the individuals acted improperly to interfere with its plans to purchase and develop real property in Knox County, Tennessee. According to its complaint, Clear Water paid $6,000 to Gloria L. Melgaard Trusts (the "Trusts") for the option of purchasing and developing approximately 111 acres of real property. Its purchase was contingent on the approval of a development plan, obtaining rezoning approval, and the performance of certain site development work. Clear Water alleges it contracted with Paul J. Murphy, III to sell about thirty acres of the property to him once Clear Water executed its option contract with the Trusts and paid the $6,000. According to Clear Water, Mr. Murphy voided his contract with Clear Water on April 18, 2014, due to "improperly motivated conduct and/or improper means" of twenty-three named individuals (the "Defendants"), causing Clear Water to suffer monetary damages.

Clear Water alleges that it then contracted to sell the same thirty or so acres of property to Belle Investment Company, Inc. ("Belle Investment"), and that Belle Investment required Clear Water to make certain changes to the plans that were different from the specifications Mr. Murphy had requested, and that these changes caused Clear Water to incur damages. With regard to seventy or so acres of the remaining property, Clear Water asserts it submitted a rezoning application to the Knoxville/Knox County Metropolitan Planning Commission ("MPC") in July 2013 to classify the seventy acres as "low density" residential use. Clear Water claims it submitted a development plan seeking approval of a multi-family dwelling development as well as for a use-on-review request for approval of a marina for the adjoining property that it was not seeking to develop into multi-family dwellings.

According to Clear Water, the Defendants, individually and through their attorney/agent, "vigorously opposed" its rezoning application and development plans for apartments as well as the use-on-review for the construction of a marina on the adjoining property. Clear Water alleges the Defendants created false e-mail accounts that appeared to be from residents of neighborhoods around the proposed development to send to MPC members and County Commissioners for the purpose of opposing the proposed development. Clear Water alleges that defendant Susannah Sayre sent a flyer containing false and misleading information home with approximately 833 elementary school children encouraging parents of the children to oppose the proposed development. Clear Water further alleges that defendant Charles E. Benson circulated to residents living near the proposed development a different flyer containing false and misleading information about the development. Clear Water also asserts that defendant David Kiger, who owns a marina located approximately one mile from the proposed marina, submitted an affidavit

containing materially false and misleading information regarding the proposed marina to both the MPC and the BZA in an effort to cause the agencies to deny Clear Water's request to develop a marina.

Clear Water asserts that its rezoning application, development plan, and use-on-review were placed on the MPC's agenda for its September 12, 2013, meeting. Due to the Defendants' opposition, the MPC postponed reviewing Clear Water's applications for sixty days, and on November 14, 2013, the MPC approved the rezoning classification, the development plan for the apartment complex, and the use-on-review for the marina. Then, on December 16, 2013, the Knox County Commission (the "Commission") approved the rezoning application as recommended by the MPC.

The Defendants appealed the MPC's decision to the Board of Zoning Appeals ("BZA") on November 14, 2013. Clear Water asserts that the materials the Defendants submitted to the BZA contained materially false and misleading information about both the planned development and the marina. On February 26, 2014, the BZA upheld the MPC's decision to approve the development plan and reversed the MPC's decision to approve the use-on-review for the marina. Clear Water alleges that as a result of the delays to the project caused by the Defendants, it had to pay an additional $20,000 to the Trusts to extend its option contract to purchase the property at issue.

According to Clear Water's complaint, the Defendants filed a petition for certiorari with the Circuit Court of Knox County on March 28, 2014, challenging the BZA's approval of the development plan, and it filed a petition seeking review of the BZA's decision to deny the use-on-review for the marina. On June 16, 2015, the trial court upheld the BZA's decision with regard to both the development plan and the marina, and the Defendants appealed the trial court's decision to uphold the BZA's approval of the development plan to the Court of Appeals.[1]

During the pendency of the petitions for certiorari, Clear Water was having a boundary survey performed pursuant to the terms of the development plan. The survey required accessing the neighboring property, which was owned by Glenn Loy, Michael Whitaker, and June Whitaker, all of whom are named defendants. These defendants refused the surveyor access to their property, making it necessary for Clear Water to obtain a court order requiring the defendants to allow this access. During this same period, Clear Water alleges that another defendant, Cheryl Hatcher, made a false claim to the United States Fish and Wildlife Service ("FWS") that Clear Water was disturbing or destroying blue heron nests. Clear Water asserts that this conduct by these defendants further delayed the development of the property and caused Clear Water to incur additional and unnecessary expenses.

---

[1]The current appeal is unrelated to the Defendants' appeal of the BZA's decision.

Finally, Clear Water alleges that defendant Rebecca Benson published false statements about John Huber, one of the principals of Clear Water, to at least one other person in the form of an e-mail. According to Clear Water, this e-mail falsely stated that Huber has told "so many lies" and that Mr. Huber intended to build a roadway through the Woodland Springs subdivision, which Clear Water asserts was not true.

The causes of action Clear Water asserts against the Defendants include claims for tortious interference with its business relationships, tortious interference with its contracts, and civil conspiracy. Clear Water seeks compensatory damages in an amount not to exceed $550,000 and requests punitive damages as well.

In November 2015, twenty-one of the Defendants filed a motion to dismiss the complaint pursuant to Rule 10.03 of the Tennessee Rules of Civil Procedure. The Defendants argued that Clear Water's complaint was based on particular contracts and that Clear Water failed to attach any of the contracts to its complaint as Rule 10.03 required. Then, in December 2015, fifteen of the Defendants filed a different motion to dismiss pursuant to Rule 12.02(6) of the Tennessee Rules of Civil Procedure on the basis that Clear Water had failed to state a claim upon which relief could be granted as to these individuals. The Defendants also argued that their activities petitioning the government in opposition to Clear Water's planned development and participating in litigation appeals were privileged.

The trial court held a hearing on both of the motions to dismiss on December 14, 2015, and it granted both of the motions by orders dated December 28, 2015. With respect to the Defendants' Rule 12.02(6) motion, the court stated:

> After argument of respective Counsel here today and a review of the record as a whole, this Court finds that the Plaintiff's complaint includes factual allegations about some Defendants, but does not contain any factual allegations about the unnamed Defendants that Mr. Lucas and Mr. O'Neal represent here today.
>
> This Court also finds the acts alleged in the Plaintiff's complaint are privileged pursuant to TCA 4-21-1003; therefore, the Defendants' motion to dismiss pursuant to Rule 12.06 is hereby granted as to the named Defendants for failure to state a claim upon which relief can be granted, as well as privileged pursuant to TCA 4-21-1003. This includes all claims, including any unraised claims for defamation or other claims arising from litigation.
>
> As to attorney fees, this Court will award reasonable attorney fees pursuant to TCA 4-21-1003, due to no named exceptions being raised on

behalf of the Plaintiffs prohibiting the Defendants from covering such. And that's my order.

The trial court then ruled on the Defendants' Rule 10.03 motion as follows:

> There is no doubt in my mind that this whole thing is founded upon a breach of contract between these different parties.

> There's three alleged contracts in here in this complaint, and for that reason I'm going to grant the motion to dismiss pursuant to 10.03. There's three exceptions in the 10.03, but they don't meet any of those three exceptions.

> It's not public records. It's not filed as public records. It's not inaccessible to the pleaders. The adverse party apparently does not have it, and it's not an insurance claim. I'm going to grant that motion also.

The Defendants' attorneys filed an application for their fees and expenses in January 2016, and the trial court issued an order on February 4, 2016, awarding the Rule 12 Defendants $25,535 for attorneys' fees and costs pursuant to Tenn. Code Ann. § 4-21-1003.

On January 20, 2016, Clear Water filed a motion pursuant to Rules 59 and 60 of the Tennessee Rules of Civil Procedure to alter or amend the judgment granting the Defendants' Rule 10 motion to dismiss. Clear Water pointed out that its complaint includes a claim for tortious interference with existing or prospective business relationships in addition to a claim for tortious interference with contract, and that the business relationships claim does not require that there be a contract or that it be breached. Clear Water also argued that the law does not require a contract to be attached to a complaint for a plaintiff to state a claim for tortious interference with contract.

The Defendants moved to strike Clear Water's motion to alter or amend, asserting that the trial court lacked jurisdiction over the case because Clear Water's motion was an unauthorized motion for reconsideration rather than a true motion to alter or amend. By order entered on March 3, 2016, the trial court agreed with the Defendants' argument and granted their motion to strike Clear Water's motion to alter or amend, finding that the court lost jurisdiction over the case after January 27, 2016, which was thirty days following the date of its order granting the Rule 10 Defendants' motion to dismiss. On the same day, the court entered an alternative order denying Clear Water's motion to alter or amend "even if the Court were to construe Plaintiff's Motion as a motion to alter or amend filed pursuant to Rule 59."

Clear Water filed two notices of appeal: one on March 4, 2016, and the other on April 1, 2016. On appeal, Clear Water contends the trial court erred by ruling (1) that its complaint failed to state a cause of action with respect to the Rule 12 Defendants; (2) that its complaint should be dismissed pursuant to Rule 10.03 of the Tennessee Rules of Civil Procedure; (3) that the Rule 12 Defendants are entitled to recover their attorneys' fees pursuant to Tenn. Code Ann. § 4-21-1003; and (4) that its motion to alter or amend should be stricken.

## II. ANALYSIS

### A. Rule 12.02(6) Motion to Dismiss

#### 1. Standard of Review

A party that files a motion pursuant to Rule 12.02(6) asserts that the plaintiff has failed to state a claim upon which relief can be granted. TENN. R. CIV. P. 12.02(6). The motion "challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence." *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011); *see also Willis v. Tenn. Dep't of Corr.*, 113 S.W.3d 706, 710 (Tenn. 2003). A Rule 12.02(6) motion is resolved by examining the complaint alone; if the plaintiff can prove any set of facts in support of the claims asserted that would entitle it to relief, the trial court should deny the motion to dismiss. *Webb*, 346 S.W.3d at 426 (citing *Leggett v. Duke Energy Corp.*, 308 S.W.3d 843, 851 (Tenn. 2010); *Crews v. Buckman Labs. Int'l, Inc.*, 78 S.W.3d 852, 857 (Tenn. 2002)). The party filing the motion "'admits the truth of all the relevant and material allegations contained in the complaint, but . . . asserts that the allegations fail to establish a cause of action.'" *Phillips v. Montgomery Cnty.*, 442 S.W.3d 233, 237 (Tenn. 2014) (quoting *Webb*, 346 S.W.3d at 426) (additional citations omitted). When ruling on Rule 12.02(6) motions, courts are to "'construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences.'" *Id.* (quoting *Webb*, 346 S.W.3d at 426) (further citations omitted). The determination of whether a complaint should be dismissed for failure to state a claim is a question of law that appellate courts review de novo, with no presumption of correctness afforded to the trial court's decision. *Id.*; *Webb*, 346 S.W.3d at 426.

#### 2. Civil Conspiracy

The following Defendants joined together to file the Rule 12.02(6) motion in December 2015: Charles W. and Mary Benson, Russ and Tracy Ford, Frank and Belinda Gambuzza, Dennis Hatcher, Mark and Kathy Jackson, Mark and Virginia Smothers, Robert Whitaker, Sherry Whitaker, Sharon Boyce, and Jack Woodall ("Rule 12 Defendants"). The basis of their motion was that Clear Water included no specific factual allegations in its complaint about any of these individuals. Clear Water responded

that it asserted a claim for civil conspiracy against all of the Defendants, some of whom were identified by name as engaging in particular activities, and some of whom were not. In paragraph 75 of its complaint, Clear Water alleged:

> At all times pertinent herein the Defendants were a combination of two or more persons who, each having the intent and knowledge of the other's intent, accomplished by concert the goal of intentionally interfering with the Plaintiff's contractual relationships and/or business relationship, with unlawful purpose, unlawful means, or both. Such civil conspiracy resulted in actual damage to the Plaintiff.

The Tennessee Supreme Court has stated that "[a]n actionable civil conspiracy is a combination of two or more persons who, each having the intent and knowledge of the other's intent, accomplish by concert an unlawful purpose, or accomplish a lawful purpose by unlawful means, which results in damage to the plaintiff." *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 703 (Tenn. 2002). The elements of the cause of action include: "(1) a common design between two or more persons, (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury." *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 38 (Tenn. Ct. App. 2006) (citing *Morgan v. Brush Wellman, Inc.*, 165 F.Supp.2d 704, 720 (E.D. Tenn. 2001)). A conspiracy is actionable only if the underlying predicate tort was committed as part of the conspiracy. *Watson's Carpet & Floor Coverings, Inc. v. McCormick*, 247 S.W.3d 169, 180 (Tenn. Ct. App. 2007). If a conspiracy is proven, each conspirator is liable for his or her co-conspirators' wrongful acts and for the damages resulting to the plaintiff. *Trau-Med*, 71 S.W.3d at 703.

A review of the complaint reveals that Clear Water alleged the Defendants acted with a common design to interfere with the contracts and business relationships Clear Water had with the Trusts, with Paul J. Murphy, III, and with Belle Investment. Clear Water alleged that the Defendants interfered with its relationships by creating false e-mail accounts to cause members of the MPC and County Commissioners to believe there was more opposition to the proposed development; that the Defendants, through their attorney and agent, sought unnecessary postponements of Clear Water's rezoning application, development plan, and use-on-review for the marina for the purpose of causing delay and increasing the expenses and costs to Clear Water; that the Defendants published false and misleading information about the proposed development on a website they maintained to prevent the proposed development; and that the Defendants submitted false information to the BZA regarding the effects of the proposed development on existing homes. Thus, Clear Water articulated overt acts by the Defendants to support its claim for civil conspiracy against the Defendants so long as we find Clear Water's predicate act(s) were sufficient to withstand the Defendants' motion to dismiss. *See Emerson v. Machamer*,

431 S.W.2d 283, 286 (Tenn. 1968) (explaining overt acts of the conspiracy are what cause damages).

Clear Water also alleged that the Defendants were commanding, directing, and/or knowingly authorizing their attorney in furtherance of the civil conspiracy described in the complaint, and that the Defendants were vicariously liable for their attorney/agent's acts and omissions. The Defendants contend Clear Water failed to allege that the Defendants' attorney engaged in tortious interference with Clear Water's business relations. However, Clear Water asserted that the Defendants' attorney "explicitly represented to the BZA" that a mock-up created by the Defendants and/or their attorney was "an intentional or reckless factual misrepresentation of the appearance of the development plan approved by the MPC" and that the attorney knew or should have known that the mock-up was false and misrepresented the location, nature, and appearance of the planned development. Thus, we find Clear Water has stated a claim for vicarious liability on the part of the Defendants for their attorney's conduct. *See Givens v. Mullikin, ex. rel. Estate of McElwaney*, 75 S.W.3d 383, 395 (Tenn. 2002) (recognizing that client may be vicariously liable for acts or omissions of attorney when acts or omissions are "directed, commanded, or knowingly authorized" by client); *Trau-Med.*, 71 S.W.3d at 697 (finding insurer may be vicariously liable for attorney's conduct where insurer controls details of attorney's performance, dictates strategy or tactics, or directs attorney's conduct of litigation).

### 3. Intentional Interference with Business Relationships

Clear Water's civil conspiracy claim hinges on the viability of the torts Clear Water asserts against the Defendants. The Rule 12 Defendants allege Clear Water has failed to state a claim for tortious interference with business relationships because Clear Water had a contractual relationship with the Trusts, Mr. Murphy, and Belle Investment. According to the Defendants, "the tort of intentional interference with business relationships does not apply where there is a contractual relationship between the Plaintiff and the third party."

The Tennessee Supreme Court expressly adopted the tort of intentional interference with business relationships in *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691 (Tenn. 2002). The Court explained that the elements of the tort include the following:

> (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the

defendant's improper motive or improper means; and finally, (5) damages resulting from the tortious interference.

*Trau-Med*, 71 S.W.3d at 701 (footnotes and citation omitted). In its complaint, Clear Water alleged that the Defendants had knowledge of its business and/or contractual relationships with the Trusts and with a purchaser of the property once the development was approved and Clear Water completed certain work on the project and that the Defendants intended to interfere with Clear Water's development of the property that was the subject of its business relationship with the Trusts and Belle Investment. Clear Water contends that its existing contracts with the Trusts and Belle Investment were not the basis for its claim of tortious interference with business relationships. Rather, Clear Water asserts that its claim was based on the necessity of continuing to negotiate with the Trusts, Mr. Murphy, and Belle Investment in an effort to develop the property as a result of the Defendants' misconduct and the excess and unnecessary costs and expenses it incurred as a result of the Defendants' improper conduct.[2]

The *Trau-Med* Court expressly adopted comment c of the Restatement (Second) of Torts § 766B, which states:

"The relations protected against intentional interference by the rule stated in this Section include *any prospective contractual relations*, except those leading to contracts to marry, if the potential contract would be of pecuniary value to the plaintiff. Included are interferences with the prospect of obtaining employment or employees, *the opportunity of selling or buying land* or chattels or services, and any other relations leading to potentially profitable contracts. Interference with the exercise by a third party of an option to renew or extend a contract with the plaintiff is also included. Also included is interference with a continuing business or other customary relationship not amounting to a formal contract."

*Trau-Med*, 71 S.W.3d at 701 n.4 (quoting RESTATEMENT (SECOND) OF TORTS § 766B (1979), comment c) (emphasis added). As the quoted portion notes, a defendant's interference with any prospective contractual relationship or exercise of an option to renew or extend a contract is explicitly covered by the tort of intentional interference with business relationships.

---

[2] Clear Water stated in paragraph 73 of its complaint that the Defendants' actions, assertions, allegations, and delaying tactics constituted tortious interference with Clear Water's reasonable business expectancies. In paragraph 74, Clear Water asserted that the Defendants' false or reckless statements were made with the intent to cause a breach or termination of Clear Water's business relationships with the Trusts.

- 9 -

The only real question, then, with regard to Clear Water's claim for tortious interference with its business relationships, is whether its current contractual relationships bar it from asserting this tort with respect to its future contractual or other business relationships with the same third parties. Clear Water relies on the case *Tennison Brothers, Inc. v. Thomas*, No. W2013-01835-COA-R3-CV, 2014 WL 3845122 (Tenn. Ct. App. Aug. 6, 2014), to argue that they do not. In *Tennison Brothers*, the plaintiff, Tennison Brothers, owned real property and entered into a lease agreement pursuant to which Clear Channel Outdoor ("CCO") had the right to erect a billboard on its property. *Tennison Brothers*, 2014 WL 3845122, at *1. A neighboring landowner had a competing right to erect a billboard on his property, but both billboards could not be erected concurrently under the governing code. *Id.* at *2. Tennison Brothers sued its neighbor and other related parties for tortiously interfering with its business relationship with CCO, among other claims. *Id.* at *2. The only business relationship with which Tennison Brothers asserted the defendants interfered was its lease agreement with CCO, and this contractual relationship was not addressed as an issue by either the trial court or the Court of Appeals. *See id*. at *5 and *12. The Court of Appeals recited the allegations of Tennison Brothers' complaint relating to its tortious interference claim, which included the averment that Tennison Brothers' and CCO's business relationship was based on a lease agreement. *Id.* at *12. The *Tennison Brothers* Court then concluded that Tennison Brothers had "pled facts sufficient to satisfy the prima facie requirements for the intentional interference with business relationships tort." *Id.* at *13.

The Defendants rely on two federal court opinions interpreting Tennessee law to argue that Clear Water's contracts bar it from asserting a claim for tortious interference with business relationships. In *Crouch v. Pepperidge Farm, Inc.*, 424 Fed. Appx. 456 (6th Cir. 2011), the Sixth Circuit cited *Trau-Med* for the proposition that the Tennessee tort of wrongful interference with a business relationship "protects non-contractual business relationships" and refused to allow the plaintiff to apply this claim to his contractual relationship with a third party. *Crouch*, 424 Fed. Appx. at 461. In a similar vein, the District Court for the Western District of Tennessee issued an opinion stating that a plaintiff's claim for intentional interference with business relationships is limited to non-contractual relationships. *Lick Branch Unit, LLC v. Reed*, No. 3:13-cv-203, 2014 WL 546696, at *15 (E.D. Tenn. Feb. 10, 2014). The district court cited *Trau-Med* and referred to comment c of the Restatement (Second) of Torts § 766B that the *Trau-Med* Court expressly adopted to explain its decision not to apply the tort to relationships that involve a formal contract. *Id.*

It is difficult to square the result in *Tennison Brothers* with *Crouch* and *Lick Branch Unit*.[3] However, in light of Clear Water's assertion that its claim is not based on

---

[3]We also note that it does not appear from the *Tennison Brothers* opinion that any of the defendants made the argument that the tortious interference with business relationships claim was not available to the plaintiff as a result of the plaintiff's contractual relationship with CCO. Thus, the

the contracts it had with the Trusts, Belle Investment, and Mr. Murphy, but instead was based on future contracts and business relationships with some or all of these third parties, we need not try to reconcile the discrepancy among these cases. We believe the fact that Clear Water had contractual relationships with the same third parties with which it alleged it had business relationships and which formed the basis of its tortious interference claim is inconsequential so long as the tortious interference claim is based on future contractual and/or business relationships, not current or prior contractual relationships. Implicit in comment c of the Restatement (Second) of Torts § 766B is that a plaintiff asserting this tort may have an existing contract with a third party when the defendant engages in improper conduct that interferes with the plaintiff's future contractual relationship with that third party. *See* RESTATEMENT (SECOND) OF TORTS § 766B (1979), comment a ("This section is concerned only with intentional interference with prospective contractual relations, not yet reduced to contract.").

### 4. Judicial Privilege

We now turn briefly to the argument the Rule 12 Defendants made in their motion to dismiss that any statements they may have made in the course of judicial proceedings and their participation in litigation appeals were privileged. The Defendants concede in their brief that this privilege only extends to claims for defamation, *see Evans v. Nashville Banner Publ'g Co.*, No. 87-164-II, 1988 WL 105718, at *3 (Tenn. Ct. App. Oct. 12, 1988), and Clear Water has indicated that it is not pursuing any defamation or slander causes of action against any of the Defendants. Thus, the issue of privilege is no longer an issue on appeal.

We conclude that Clear Water has stated a claim for civil conspiracy against all of the Defendants, with tortious interference with its business relationships as the predicate tort, and that the trial court erred in granting the Defendants' Rule 12.02(6) motion with respect to these claims.

### B. Rule 10 Motion to Dismiss

The following Defendants joined together to file a motion to dismiss pursuant to Rule 10.03: Charles E. and Rebecca Benson, Cheryl and Dennis Hatcher, Mark and Kathy Jackson, Glen Loy, Mark and Virginia Smothers, Michael and Sherry Whitaker, Sharon Boyce, Jack Woodall, Susannah Sayre, and David Kiger ("Rule 10 Defendants"). They argued that Clear Water's complaint should be dismissed because it was based on various contracts with which Clear Water alleged the Defendants interfered, and Clear Water failed to attach a copy of the contracts as required by Rule 10.03.

---

*Tennison Brothers* Court may have had no reason to address this issue head on.

Rule 10.03 provides as follows:

> Whenever a claim or defense is founded upon a written instrument other than a policy of insurance, a copy of such instrument or the pertinent parts thereof shall be attached to the pleading as an exhibit unless the instrument is (1) a matter of public record in the county in which the action is commenced and its location in the record is set forth in the pleading; (2) in the possession of the adverse party and this fact is stated in the pleading; (3) inaccessible to the pleader or is of such nature that attaching the instrument would be unnecessary or impracticable and this fact is stated in the pleading, together with the reason therefor. Every exhibit so attached or referred to under (1) and (2) shall be a part of the pleading for all purposes.

Clear Water did not seek to amend its complaint to attach a copy of its third party contracts in response to the Rule 10 Defendants' motion to dismiss. Instead, it argued that because its claims against the Defendants were tort claims rather than breach of contract claims, Rule 10 did not come into play. Alternatively, Clear Water stated in its response that if the trial court concluded that its claim was founded upon written instruments and was subject to Rule 10.03, that "Plaintiff ha[d] no objection to amending its Complaint to include the redacted contracts and extensions that reflect the obligations of the Plaintiff and the increased costs associated with the conduct complained of in its Complaint."[4]

In ruling on the Rule 10 Defendants' motion to dismiss, the trial court did not acknowledge this offer by Clear Water to amend its complaint for the purpose of attaching the relevant contracts as exhibits. Instead, the trial court dismissed the complaint because the "whole thing [was] founded upon a breach of contract between these different parties" and because the three exceptions set out in Rule 10.03 did not apply.[5]

On appeal, Clear Water argues again that because its cause of action is in tort rather than for breach of contract, Rule 10.03 is not applicable. The language of Rule 10.03 is unambiguous, however, that absent certain circumstances that the parties agree do not exist here, if "a claim or defense is founded upon a written instrument other than a policy of insurance, a copy of such instrument or the pertinent parts thereof shall be attached to the pleading as an exhibit . . . ." TENN. R. CIV. P. 10.03. Clear Water does

---

[4]Clear Water contended that the original purchase price was not material to its claims against the Defendants and that it would redact this amount from the document if the court required the contract to be attached as an exhibit to the complaint.

[5]The record does not contain a transcript of the hearing, so we do not know if Clear Water's attorney offered to amend the complaint to attach the contracts at issue as exhibits.

not deny that its claim for tortious interference with contract is founded upon "written instruments." Thus, we conclude that Rule 10.03 applies to this claim by Clear Water. In response to Clear Water's argument that Rule 10.03 does not contemplate dismissal as a sanction for failing to comply with the rule, we note that Rule 41.02(1) provides that a plaintiff's complaint may be dismissed if the plaintiff fails to comply with the rules set forth in the Tennessee Rules of Civil Procedure. TENN. R. CIV. P. 41.02(1); *see Maynard v. Meharry Med. Coll*., No. 01-A-01-9408-CH-00400, 1995 WL 41598, at *1 (Tenn. Ct. App. Feb. 1, 1995) (granting defendants' motion to dismiss complaint due to failure to attach copy of contract documents to complaint as required by Rule 10.03).

Clear Water relies on the case *Wallace v. National Commerce Bancorporation*, No. 02A01-9205-CV-00143, 1993 WL 44600 (Tenn. Ct. App. Feb. 23, 1993), to argue that the trial court erred in dismissing its tortious interference with contract claim based on its failure to comply with Rule 10.03. The plaintiffs in *Wallace* had checking accounts with the defendant banks and alleged that the banks improperly charged them processing fees. *Wallace*, 1993 WL 44600, at *1. One of the plaintiffs' claims was that the banks breached their common law contractual obligation to deal with their customers fairly and in good faith. *Id.* at *2. This claim was based on the parties' signature cards, which were not attached as exhibits to the complaint. *Id.* at *4. Recognizing the plaintiffs' failure to comply with Rule 10.03, the *Wallace* Court excused this violation because "the averments of the complaint concerning the substance of the depositor's agreement [met] the bare minimum requirements to premise the allegation of breach of the duty of good faith in the performance of the contract." *Id.* As a result, the *Wallace* Court vacated the trial court's dismissal of this claim and remanded the case for further proceedings. *Id.* at *7.

Before addressing whether Clear Water included averments in its complaint to meet the bare minimum requirements upon which to premise its cause of action, as was the case in *Wallace*, we must determine whether Clear Water stated a cause of action for tortious interference with its contracts. The Court of Appeals has stated that a party in Tennessee can recover for tortious interference with the performance of a contract if the plaintiff can prove the following:

> (1) that there was a legal contract; (2) that the defendant knew of the existence of the contract; (3) that the defendant intended to induce a breach of the contract; (4) that the defendant acted maliciously; (5) that the contract was actually breached; (6) that the defendant's acts were the proximate cause of the breach; and (7) that the plaintiff suffered damages resulting from the breach.

*Lee v. State Volunteer Mut. Ins. Co., Inc.*, No. E2002-03127-COA-R3-CV, 2005 WL 123492, at *10 (Tenn. Ct. App. Jan. 21, 2005); *see also Molloy v. Hrisko*, No. M2014-

- 13 -

01351-COA-R3-CV, 2015 WL 4323028, at *8 (Tenn. Ct. App. July 14, 2015) (citing *Hart v. First Nat'l Bank of Memphis*, 690 S.W.2d 536, 540 (Tenn. Ct. App. 1985)).

Clear Water's complaint includes the following relevant allegations:

5. CLEAR WATER contracted with Paul J. Murphy III to purchase a portion of the Property from CLEAR WATER once CLEAR WATER had executed its option to purchase the subject property. In full or in part, as a result of the improperly motivated conduct and/or improper means of the Defendants in concert, Paul J. Murphy III voided that contract on April 18, 2014, costing the Plaintiff actual monetary damages. This contract for purchase was for approximately 30 acres.

6. The Defendants were aware of the business relationship between the Plaintiff and Paul J. Murphy III and sought to induce Paul J. Murphy III to void that business relationship and/or contract by improper means and/or improper motivation as set out in detail herein below, and as will be more fully described upon trial of this cause.

7. After the contractual and/or business relationship with Paul J. Murphy III was destroyed by the Defendants, Plaintiff CLEAR WATER contracted with Belle Investment Company, Inc. to purchase that same portion of the Property from CLEAR WATER once CLEAR WATER had executed its option to purchase the portion of the Property from Gloria Melgaard Trusts and fulfilled certain other obligations with respect to the Property. All obligations either have been or will be fulfilled with the exception of the rezoning, approval of the Development Plan for the apartment complex, and use-on-review, all of which have previously been fulfilled to the satisfaction of the Plaintiff and Belle Investment Company, Inc. but have been delayed by the Defendants through improper motive and means.

8. Belle Investment Company, Inc. required the Plaintiff to substantially alter the original plans created by the Plaintiff to Paul J. Murphy III's specifications. These changes included, but were not limited to, moving the entrance to the development, updating the Traffic Impact Study, shift and change the footprint of the development, creation of new grading, erosion control, drainage, pedestrian egress, landscaping, clearing, amenity and utility plans, and resubmission of a different clarifying or explanatory Development Plans to the MPC for administrative approval. These changes caused the Plaintiff actual damages.

. . . .

- 14 -

73. Defendants' actions, assertions, allegations, and delaying tactics were pursued in major part for the purpose of causing harm, loss, and expense to Plaintiff. Defendants' conduct amounts to tortious interference with Plaintiffs contractual rights; such conduct likewise constitutes tortious interference with reasonable business expectancies of Plaintiff.

74. The false or reckless statements outlined herein were made with the intent to cause a breach or termination of the Plaintiff's business relationships with Gloria Melgaard Trusts.

. . . .

78. The Defendants were actually aware of the business and/or contractual relationship of the Plaintiff with Gloria Melgaard Trusts. The Defendants were aware that Plaintiff had other business and/or contractual relationships pursuant to the execution of the Approved Development Plan and that those relationships included purchase of property from the Plaintiff upon which to construct an apartment complex, once the development had been approved and certain work had been completed on the project by the Plaintiff.

79. The Defendants' predominant purpose in the above set-out conduct was to injure the Plaintiff and make it economically unfeasible for the project to be completed in an effort to scuttle the project by means other than those allowed by the law.

The only contract Clear Water allegedly asserts was breached was its contract with Mr. Murphy.[6] However, although Clear Water states that the Defendants were aware of its business relationship with Mr. Murphy, Clear Water does not allege the Defendants were aware of its contract with Mr. Murphy. Further, Clear Water fails to specify how the Defendants' acts were the proximate cause of the breach, as it must to state a claim for tortious interference with its contract. *See Lee*, 2005 WL 123492, at *10 ("complaint alleging tortious interference with the performance of a contract must also allege specific facts that, if true, would support each of the seven elements of the tort").

Thus, because we conclude Clear Water failed to state a claim for tortious interference with its contracts, the question whether its claim should be dismissed because it failed to comply with Rule 10.03 is pretermitted.

---

[6]Clear Water asserts in paragraph 5 of the complaint that Mr. Murphy "voided" the contract he had with Clear Water. We assume for purposes of this argument that Clear Water intended "voided" to mean "breached."

C. Award of Attorneys' Fees

The trial court awarded the Rule 12 Defendants their attorneys' fees pursuant to Tenn. Code Ann. § 4-21-1003(c). This statute, in its entirety, provides:

(a) Any person who in furtherance of such person's right of free speech or petition under the Tennessee or United States Constitution in connection with a public or governmental issue communicates information regarding another person or entity to any agency of the federal, state or local government regarding a matter of concern to that agency shall be immune from civil liability on claims based upon the communication to the agency.

(b) The immunity conferred by this section shall not attach if the person communicating such information:

(1) Knew the information to be false;

(2) Communicated information in reckless disregard of its falsity; or

(3) Acted negligently in failing to ascertain the falsity of the information if such information pertains to a person or entity other than a public figure.

(c) A person prevailing upon the defense of immunity provided for in this section shall be entitled to recover costs and reasonable attorneys' fees incurred in establishing the defense.

The trial court did not explain how this statute entitled the Rule 12 Defendants to recover their attorneys' fees, and we find the trial court's award was erroneously made, especially at this stage of the proceedings. When they first moved for an award of their fees, the Defendants asserted they were immune from prosecution for their statements to the MPC and/or BZA under the doctrine of judicial privilege. However, none of the Defendants in this case has prevailed on any claim of immunity, which is required before an award of fees and costs can be granted under this statute. Tenn. Code Ann. § 4-21-1003(c). Moreover, Clear Water has asserted that the statements the Defendants made to the MPC and BZA were known to be false when they were made or were made in reckless disregard of their falsity. The statute is clear that immunity "shall not attach" if the statements made to a governmental agency are knowingly false or are made in reckless disregard of their falsity. Tenn. Code Ann. § 4-21-1003(b). Finally, the Defendants would only be entitled to the defense of judicial privilege if Clear Water were suing them for defamation, *Trau-Med*, 71 S.W.3d at 702, and Clear Water has stated that it is not pursuing any defamation claim against any of the Defendants. For all of these

reasons, we reverse the trial court's award of attorneys' fees and costs to the Rule 12 Defendants.

### D. Clear Water's Motion to Alter or Amend

After the trial court entered its order granting the Rule 10 Defendants' motion to dismiss on December 28, 2015, Clear Water filed a motion to alter or amend "pursuant to Rules 59 and 60 of the Tennessee Rules of Civil Procedure" on January 20, 2016. Clear Water argued in its motion that the trial court failed to address its claim for tortious interference with business relationships when it ruled that Clear Water's failure to attach its contract(s) to the complaint was fatal to Clear Water's case. Clear Water also argued that it is not necessary to attach a contract to a complaint to articulate a claim for tortious interference with a contract. Clear Water asked the trial court to alter or amend its earlier judgment to find that Clear Water's failure to attach any of its contracts to the complaint was not fatal to any of the claims asserted in the complaint. In the alternative, Clear Water asked the court to alter or amend its earlier judgment "to reflect that only the claims for tortious interference with contract are dismissed for failure to attach any contracts, as the claims for tortious interference with existing or prospective business relationships do not require the existence of a contract."

On February 12, 2016, the Defendants filed a motion to strike Clear Water's motion to alter or amend, arguing that the trial court lacked jurisdiction to rule on the motion. The Defendants contended that although Clear Water's motion purported to be a motion to alter or amend pursuant to Rule 59, the substance of the motion was one for reconsideration, which is not permitted under the rules. According to the Defendants, the trial court's order entered on December 28, 2015, became final and non-appealable thirty days later, on January 27, 2016, unless Clear Water filed a proper motion under Rule 59, which would toll the thirty-day period for filing a notice of appeal. See TENN. R. CIV. P. 59.01; TENN. R. APP. P. 4(b).

The trial court entered a "Final Order" on February 4, 2016, granting the Rule 12 Defendants' motion to dismiss and application for attorneys' fees and expenses. Then, on March 3, 2016, the trial court entered an order granting the Defendants' motion to strike Clear Water's motion to alter or amend for the reasons stated in the Defendants' motion. The trial court faulted Clear Water for failing to allege in its motion that the court "committed 'clear error,'" and concluded Clear Water's motion was substantively a motion for reconsideration rather than a motion to alter or amend, despite its title.

Clear Water filed two notices of appeal:  first on March 4, 2016, in which it appealed the trial court's "Final Order" entered on February 4, 2016, and second on April 1, 2016, in which it appealed the trial court's order granting the Rule 10 motion to dismiss, the order denying Clear Water's motion to alter or amend, and the order granting the Defendants' motion to strike for lack of jurisdiction.

On appeal, the Defendants argue this Court lacks jurisdiction over Clear Water's appeal of the order granting the Rule 10 Defendants' motion to dismiss because Clear Water's motion to alter or amend was not a valid motion under Rule 59.04, and, thus, the motion did not toll the time for filing a notice of appeal.[7] The Defendants concede that if we determine that Clear Water's motion to alter or amend was valid, then Clear Water's notice of appeal filed on April 1 was timely.

Motions to alter or amend a judgment are authorized by Tennessee Rule of Civil Procedure 59.04, which provides: "A motion to alter or amend a judgment shall be filed and served within thirty (30) days after the entry of the judgment." The rule does not list particular grounds upon which a motion to alter or amend should be based. The courts, however, have addressed the purpose and application of the rule.

> "The purpose of a Rule 59.04 motion to alter or amend a judgment is to provide the trial court with an opportunity to correct errors before the judgment becomes final." *In re M.L.D.*, 182 S.W.3d 890, 895 (Tenn. Ct. App. 2005); *Bradley v. McLeod*, 984 S.W.2d 929, 933 (Tenn. Ct. App. 1998). Such a motion "permits the trial court to revisit and rectify errors that were made when the court overlooked or failed to consider certain matters." *Morrison v. Morrison*, 2002 WL 31423848, at *2 (Tenn. Ct. App. Oct. 29, 2002). The rule affords litigants "a limited opportunity to readdress previously determined issues and afford trial courts an opportunity to revisit and reverse their own decisions." *Harris v. Chern*, 33 S.W.2d 741, 744 (Tenn. 2000).

*Baxter v. Heritage Bank & Trust*, No. M2012-02689-COA-R3-CV, 2014 WL 1118072, at *3 (Tenn. Ct. App. March 19, 2014). The *Baxter* court explained that a motion filed pursuant to Rule 59.04 should be granted if the law changes before a judgment becomes final, new evidence becomes available, or to correct a "clear error of law" or prevent injustice. *Id.* at *4 (citing *Chambliss v. Stohler*, 124 S.W.3d 116, 121 (Tenn. Ct. App. 2003); *In re M.L.D.*, 182 S.W.3d 890, 895 (Tenn. Ct. App. 2005)). "'The purpose of Tenn. R. Civ. P. 59 motions is to prevent unnecessary appeals by providing the trial courts with an opportunity to correct errors before a judgment becomes final.'" *Byrnes v. Byrnes*, 390 S.W.3d 269, 275 (Tenn. Ct. App. 2012) (quoting *Bradley v. McLeod*, 984 S.W.2d 929, 933 (Tenn. Ct. App. 1998)); *see Lee*, 2005 WL 123492, at *6-8 (treating plaintiff's petition to rehear as a motion to alter or amend based on substance of petition and purpose of Rule 59.04).

Clear Water is not arguing on appeal that the trial court should have granted its motion to alter or amend. Rather, it is arguing that its motion to alter or amend was properly filed and that the trial court erred by granting the Defendants' motion to strike it

---

[7]The Defendants acknowledge that Clear Water's Rule 12 notice of appeal was timely.

as an impermissible motion for reconsideration. The Defendants' reliance on *Goetz v. Autin*, No. W2015-00063-COA-R3-CV, 2016 WL 537818 (Tenn. Ct. App, Feb. 10, 2016), is misplaced. In *Goetz*, the appellate court found that the plaintiff raised an issue in his motion to alter or amend that had not been raised when the trial court considered the defendant's motion to dismiss; that the plaintiff argued the trial court failed to draw reasonable inferences in his favor; and that the trial court erred by considering matters outside the pleadings. *Goetz*, 2016 WL 537818, at *6. The *Goetz* court ultimately concluded that the motion would be treated as a motion to alter or amend and that the deadline to file a notice of appeal would be extended pursuant to Rule 59.01, but it warned that "[p]arties should not attempt to present previously unasserted theories or legal arguments or relitigate previously adjudicated matters under the guise of filing a Tenn. R. Civ. P. 59.04 motion to alter or amend." *Id.*

The record in this case does not include a transcript of the hearing, so we do not know what the trial court considered in ruling on the Rule 10 Defendants' motion to dismiss. Further, it is not clear from the order the trial court entered granting the Rule 10 Defendants' motion whether the court acknowledged or addressed Clear Water's claim for tortious interference with its business relationships asserted against all of the Defendants or how much consideration the court gave to whether a contract must be attached to a complaint when a plaintiff asserts a claim in tort for interfering with contractual relationships. Contrary to the Defendants' argument, Clear Water did not raise any issue for the first time in its motion to alter or amend, nor did it "simply ask[] the trial court to change its mind and accept the Plaintiff's argument that Rule 10.03 does not apply to claims for tortious interference with contracts or business relationships." Rather, Clear Water properly moved the trial court to address what it considered to be a clear error of law and/or injustice, thereby providing the trial court with an opportunity to correct any errors before its judgment became final and avoiding an unnecessary appeal. Based on our conclusion that Clear Water properly filed a motion to alter or amend pursuant to Rule 59.04, we vacate the trial court's order striking Clear Water's motion to alter or amend. We hold the time for appealing the trial court's order granting the Rule 10 Defendants' motion to dismiss was tolled pursuant to Rule 59.01 and that Clear Water's notice of appeal filed on April 1, 2016, was timely.

### III. CONCLUSION

The trial court's judgment dismissing Clear Water's claim for tortious interference with business relationships is vacated; the judgment dismissing the claim for tortious interference with contractual relations is affirmed; the judgment awarding the Rule 12 Defendants their attorneys' fees and expenses is vacated; and the judgment striking the motion to alter or amend is vacated. This case is remanded to the trial court for further

proceedings consistent with this opinion. Costs of this appeal shall be taxed to the Defendants/Appellees, for which execution shall issue if necessary.

 

 

 

_____
ANDY D. BENNETT, JUDGE